496 F.2d 1094
 7 Fair Empl.Prac.Cas. 994, 7 Empl. Prac. Dec. P 9337
Margaret KOHN, Individually and on behalf of all persons
similarly situated, Plaintiff-Appellee,
v.
ROYALL, KOEGEL & WELLS, Defendant-Appellant.
 No. 375, Docket 73-2049.
 United States Court of Appeals, Second Circuit.
 Argued April 15, 1974.
Decided May 3, 1974.
 
 Norman Ostrow, New York City, (Rogers & Wells, New York City, on the brief; Caesar L. Pitassy, Paul M. Hopkins, William Haney, III, New York City, of counsel), defendant-appellant pro se.
 Harriet Rabb, New York City, (George Cooper, New York City, on the brief), for plaintiff-appellee.
 Before KAUFMAN, Chief Judge, CLARK,* Associate Justice, and SMITH, Circuit Judge.
 IRVING R. KAUFMAN, Chief Judge:
 
 
 1
 Whether an order granting or denying class action status is an appealable 'final' order, 28 U.S.C. 1291, is a question that has received an inordinate amount of scrutiny by circuit courts,[1] and may, we hope, soon be resolved with some measure of certainty by the Supreme Court.[2] Although such orders are interlocutory in nature, we have sustained the appealability of those denying confirmation of the class where that denial, because of the relatively small amount of the individual claim, would for all practical purposes be the 'death knell of the action.' Eisen I, supra, 370 F.2d at 121. And compare Korn v. Franchard, supra (order appealable where individual claim for $386) with Shayne v. Madison Square Garden Corp., supra (appeal dismissed where individual claim for $7,482). Aside from Eisen III, supra, with its rather exceptional circumstances,[3] no circuit court, however, had permitted an appeal from an order granting class standing until we did so, only one month ago, in Herbst v. International Telephone and Telegraph Corp., supra. Bolstered by that recent decision, appellant Royall, Koegel & Wells[4] (Royall, Koegel) seeks review of Judge Lasker's order granting class action status to Margaret Kohn's Title VII[5] claim of sex discrimination in that law firm's hiring and internal employment practices. Without questioning the validity of Herbst,[6] we find it clear beyond cavil that neither our so-called 'death knell' doctrine nor the more general rubric of the Cohen collateral order doctrine apply, in the factual context of this case, to transform this interlocutory order granting class standing into an appealable 'final' order. Accordingly, and without, of course, expressing any views on the merits of the litigation, we conclude that this appeal must be dismissed.
 
 I.
 
 2
 The complaint and the affidavits submitted to Judge Lasker in connection with the motions before him provide the sparse factual record for this appeal. Margaret Kohn is a graduate of the Columbia Law School class of 1972. On November 17, 1970, during the Fall semester of her second year in law school, Kohn was among approximately 40 Columbia law students interviewed for legal positions by two members of the firm of Royall, Koegel & Wells. During the week following these preliminary interviews, Royall, Koegel invited five Columbia law students to visit its offices to continue the interviewing process. Kohn received no such invitation, nor was she offered employment by Royall, Koegel.
 
 
 3
 On May 27, 1971, Kohn filed a complaint with the New York City Commission on Human Rights alleging that Royall, Koegel's failure to hire her resulted from sex discrimination. Some six months later, on November 19, 1971, Kohn filed a similar complaint with the Equal Employment Opportunity Commission (EEOC). Finally, on June 26, 1972, Kohn received a permission to sue letter from the EEOC and, on the same day, filed this action on behalf of herself and all those similarly situated. In her complaint, she claimed the Royall, Koegel had refused her employment because of her sex, as part of an ongoing pattern and practice of sex discrimination in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. 2000e et seq. She sought mandatory injunctive relief to correct past discriminatory practices in both recrutiment and internal employment procedures, as well as damages for herself caused by the refusal to hire her.
 
 
 4
 In response to the complaint, Royall, Koegel moved to dismiss on the ground that Kohn had not filed a timely complaint with the EEOC, as required by statute.[7] Two days later, on September 28, 1972, Kohn moved pursuant to Rule 11A of the Local Rules of the Southern District of New York for a determination whether the suit could proceed as a class action.
 
 
 5
 Judge Lasker denied the motion to dismiss and granted Kohn's motion for class action status. Kohn v. Royall, Koegel & Wells, supra. He found that although Kohn had not filed her EEOC complaint within the 210-day statutory period commencing December 15, 1970, the date her failure to gain employment with Royall, Koegel became a virtual certainty,[8] the refusal to hire attacked by Kohn represented an allegedly 'continuing violation' of Title VII. Thus, the district court concluded, 'the discriminatory pattern of which plaintiff complains (was) by definition 'fresh," Kohn v. Royall, Koegel & Wells, supra, 59 F.R.D. at 518, and, accordingly, the policy behind a statute of limitations-- to bar stale claims-- did not apply.
 
 
 6
 Turning to Kohn's motion for a class action determination, Judge Lasker concluded that Kohn's class action allegations satisfied the four-part test of Fed.R.Civ.P. 23(a). He also determined that Kohn's claim for injunctive relief fell within Fed.R.Civ.P. 23(b)(2) because Royall, Koegel had allegedly 'acted . . . on grounds generally applicable to the class (defined in the complaint as 'all women qualified for legal positions at Royall, Koegel & Wells who have been or would be denied employment because of their sex'), thereby making appropriate final injunctive relief . . . with respect to the class as a whole.' Fed.R.Civ.P. 23(b)(2).
 
 
 7
 Royall, Koegel promptly moved to amend Judge Lasker's order to permit certification as an interlocutory appeal, pursuant to 28 U.S.C. 1292(b), of the denial of Royall, Koegel's motion to dismiss for untimely filing of the EEOC complaint.[9] In addition, Royall, Koegel moved for reargument of the motion to grant class action status, questioning for the first time whether Kohn, an unsuccessful employment applicant, had standing to allege discrimination in the firm's internal employment practices-- e.g. work allocation and promotion-- which arguably affects current employees only. Judge Lasker denied both motions, Kohn v. Royall, Koegel & Wells, supra, 59 F.R.D. at 523-525-- a response apparently expected by Royall, Koegel for it had already commenced processing its appeal from the district court's class action determination.[10]
 
 II.
 
 8
 Since we find the threshold question of appealability to be dispositive, we turn immediately to an elucidation of the reasons for our holding. It is undisputed that an order granting or denying class standing is not a 'final' order as that term has generally been construed. Nevertheless, in Eisen I, supra, we denied a motion to dismiss an appeal from an order denying class standing to a plaintiff whose individual claim amounted to only $70. The rationale for our decision rested on the deceptively simple premise that the effect of the order denying class standing would be to terminate that lawsuit. We could not conceive of a lawyer pressing a suit where victory would mean the paltry recovery of $70. Thus, we concluded in Eisen I that the 'interlocutory' order at issue was tantamount to an order of dismissal-- the finality of which has, of course, never been questioned-- and so, the 'death knell' doctrine was born.
 
 
 9
 The subsequent and rather checkered history of the 'death knell' doctrine, in this and other circuits, was documented most recently in two opinions of this Court, Herbst v. International Telephone and Telegraph, supra, and Shayne v. Madison Square Garden Corp., supra. In Shayne, Judge Feinberg recounted that history, in part, in this manner:
 
 
 10
 The 'death knell' doctrine, thus announced, has not atrophied through lack of use, e.g., Korn v. Franchard Corp., 443 F.2d 1301 (2d Cir. 1971); Green v. Wolf Corp., 406 F.2d 291 (2d Cir. 1968), cert. denied, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969), although it has not escaped criticism. The Third and Seventh Circuits have recently rejected the doctrine as an undue extension of the right to an appeal before final judgment.[11] Hackett v. General Host Corp., 455 F.2d 618 (3d Cir.), cert. denied, 407 U.S. 925, 92 S.Ct. 2460, 32 L.Ed.2d 812 (1972); King v. Kansas City So. Industries, Inc., 479 F.2d 1259 (7th Cir. 1973) (per curiam). Conversely, there have been rumblings of disapproval in our court because the doctrine grants a right to appeal to some plaintiffs, but not to any defendants . . ..[12]
 
 
 11
 Shayne v. Madison Square Garden Corp., supra, 491 F.2d at 400.
 
 
 12
 Shayne turned on the appealability of an order denying class standing. Despite the 'rumblings' to which Judge Feinberg referred, however, we have not until quite recently been faced with the necessity of determining the appealability of orders granting class standing. To be sure, in Korn v. Franchard, supra, which like Shayne, involved an order denying class standing, then Chief Judge Friendly, in a brief concurring opinion, did express concern over the 'death knell' doctrine's apparently unequal application as between plaintiffs and defendants. Korn v. Franchard, supra, 443 F.2d at 1307. And, in Eisen III, Judge Medina, accepting Judge Friendly's equality caveat, did note that the 'death knell' doctrine should not be limited to orders denying class standing but rather, deserved the 'practical' construction emphasized in its Supreme Court progenitors. Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) and Gillespie v. United States Steel Corp., 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964). Since the Eisen II court had specifically 'retained jurisdiction,' however, the Eisen III court's jurisdiction to review Judge Tyler's order granting class standing did not, as we have indicated, rest on a de novo determination of appealability.
 
 
 13
 In Herbst v. International Telephone and Telegraph Corp., supra, the question of appealability of an order granting class standing was squarely presented. Judge Blumenfeld had permitted Mrs. Herbst to represent a class of all Hartford Fire Insurance Company (Hartford) shareholders who had exchanged their shares for International Telephone and Telegraph Corporation (ITT) preferred stock pursuant to ITT's 1970 tender offer for Hartford-- an exchange allegedly tainted by violations of the securities laws. Herbst, herself, owned only 100 of the 22 million shares of Hartford common stock exchanged. Her class action, as is usual in such cases, rested on Fed.R.Civ.P. 23(b)(3)-- the predominant existence of common questions of law or fact-- as, indeed, had Mr. Eisen's class action claiming antitrust violations by the odd-lot brokerage houses.
 
 
 14
 Judge Lumbard, speaking for the court, though the other members of the panel candidly expressed their doubts over the holding,[13] found Judge Blumenfeld's order appealable. In reaching this conclusion, he applied the following tripartite analysis suggested in Eisen III:
 
 
 15
 (1) Whether the class action determination is 'fundamental to the further conduct of the case;'
 
 
 16
 (2) whether review of that order is 'separable from the merits;'
 
 
 17
 (3) whether that order will cause 'irreparable harm to a defendant in terms of time and money spent in defending a huge class action . . .'
 
 
 18
 See Herbst v. International Telephone and Telegraph, supra, 495 F.2d at 1312.
 
 
 19
 Although the opinion in Herbst contains little more than a mention of the first factor, Mrs. Herbst's petty share holdings support the conclusion that the order granting class standing was 'fundamental to the further conduct of the case.' We presume that since Herbst relied on Eisen III, which in turn had adopted Judge Friendly's 'equality of treatment' standard for appealability, Judge Lumbard construed this fundamental-to-the-further-conduct requirement as applying in those cases where the denial of class standing would satisfy our 'death knell' doctrine of effective dismissal. In such instances, an order granting class standing would also be 'fundamental to the further conduct of the case' for, if that order were erroneous and therefore reversed on appeal, the action would for all practical purposes be at an end. We recognize, of course, that a not insubstantial number of interlocutory orders-- principally those denying motions to dismiss pursuant to Fed.R.Civ.P. 12(b), or for summary judgment pursuant to Fed.R.Civ.P. 56-- would, if reversed on appeal, similarly prove dispositive of the litigation. Accordingly, and without reconsidering at this time the wisdom of Herbst, we hold only that a necessary though not sufficient element in the appealability equation is whether the action's viability turns on the class action determination.
 
 
 20
 The second element in the Eisen III-Herbst appealability equation-- review which is 'separable from the merits of the case'-- rests squarely on the collateral order doctrine announced by the Supreme Court in Cohen v. Beneficial Industrial Loan Corp., supra. In formulating that doctrine, the Court faced the necessity of striking the proper balance between the inequities of deferred review, on the one hand, and the unconscionable waste of judicial resources resulting from the duplication of effort in piecemeal review, on the other. Thus, an order appealable under Cohen must not only be 'a final disposition of a claimed right which is not an ingredient of the cause of action . . . (but one which) does not require consideration with it (i.e. the cause of action).' Cohen v. Beneficial Industrial Loan Corp., supra, 337 U.S. at 546-547. And, although Herbst does not focus on the degree of separability between the issues involved in the merits of the action and those underlying the propriety of the class action determination, it is reasonable to presume that in sprawling Rule 23(b)(3) class actions, such as Eisen and Herbst, questions of notice and manageability-- totally unrelated to the merits of the action-- will be in the forefront. Accordingly, legal and factual issues considered at an intermediate stage of appellate review will not likely resurface on appeal from final judgment.
 
 
 21
 The third factor, 'the irreparable harm to a defendant in terms of time and money spent in defending a huge class action,' received by far the most attention in Herbst. The enormous damages sought by the class inevitably require a sizeable expenditure for defense purposes and, because of this, will often spur settlement 'even though the validity of plaintiff's claims are doubtful.' Herbst v. International Telephone and Telegraph Corp., supra, 495 F.2d at 1314. Although large damage claims are not unique to class actions, 'the representation features of class actions,' as Judge Lumbard noted,
 
 
 22
 mean that both parties have to expend much effort and money in notifying members of the class, determining who is in and who has opted out, calculating damages, and the like. Furthermore, the district courts, if the cases go beyond initial proceedings, themselves must exercise more effort in supervising such actions than they would in individual cases.
 
 
 23
 495 F.2d at 1312-1313. We hasten to add that this additional burden, to a large extent, is limited to those class actions brought under subdivision (b) (3) of Rule 23 because it is only in those actions that the court is required to ensure that all members of the potential class are notified of the action's pendency so that they may be afforded the opportunity to opt out. Fed.R.Civ.P. 23(c)(2). Since Herbst, like Eisen, was a Rule 23(b)(3) class action, the costs of satisfying the notice requirement, both monetary and in terms of judicial resources, were of course highly relevant.
 
 III.
 
 24
 Applying to this case the same three criteria which combined to favor appealability in Herbst, we reach the opposite conclusion here. We note that defendant-appellant, appearing pro se, conceded at oral argument that Kohn could reasonably be expected to continue the action in her individual capacity. In short, appellant does not dispute that the class action determination is not 'fundamental to the further conduct of the case.' This, we might add, was hardly a surprising concession, for the difficulties in finding counsel willing to litigate a small damage claim do not face Kohn in her efforts to remedy the alleged violation of Title VII in the appellant's hiring and internal employment practices. See Hackett v. General Host Corp., supra, 455 F.2d at 622. A victorious plaintiff in a Title VII suit, for example, may recover costs and reasonable attorneys' fees. 42 U.S.C. 2000e-5(k). Counsel in this type of suit, moreover, tend to be drawn from the so-called 'public interest' bar and, accordingly, may consider the amount of fees to be of secondary importance.
 
 
 25
 Appellant's failure to demonstrate the 'fundamental' nature of this class action determination, in our view, virtually requires dismissal of the appeal. Nevertheless, we need not rest our decision on that basis alone. Turning to the second factor, we find that review of Judge Lasker's order would take us far into the merits of Kohn's sex discrimination charge. Indeed, even a cursory glance at the principal points raised by Royall, Koegel in contesting class action status reveals the unavoidable overlap.
 
 
 26
 Point I of appellant's brief, for instance, proffers the contention that there is no common question of law or fact as required by Fed.R.Civ.P. 23(a)(2). Consideration of this argument, of course, would require us to examine not only the factual strength but the legal relevancy of Kohn's allegation of a discriminatory pattern and practice in Royall, Koegel's hiring and internal employment procedures-- a claim which would otherwise seem prima facie to satisfy the common question test. Yet, the pattern and practice issue is at the very heart of the merits of this action.
 
 
 27
 Appellant also attacks the class action determination (Brief of Appellant, Point II), by claiming that Kohn will not adequately represent the class, as required by Fed.R.Civ.P. 23(a)(4), because, unlike some members of the purported class, she is not a present employee. Once again, however, were we to permit interlocutory review, we would be forced to delve into an issue-- Kohn's standing to question the firm's internal employment practices-- which is inextricably intertwined with the ultimate merits of Kohn's claim for relief.[14]
 
 
 28
 Nor, finally, can appellant sustain the contention that it will suffer 'irreparable harm' by being forced to defend this suit as a class action. All lawsuits are potentially costly and time-consuming. Attention, therefore, must be directed to the incremental cost and time in defending the particular action if it is maintained as a class action-- an insignificant amount in this case.
 
 
 29
 In contrast to Eisen and Herbst, in which a substantial cost to both the defendant and the district court would arise from compliance with the notice requirement for Rule 23(b)(3) class actions, the instant suit, brought under Rule 23(b)(2), bears, as we have noted, no such notice requirement. Moreover, even the routine litigation costs-- e.g. pretrial discovery and trial preparation-- should not be substantially greater in this instance whether Kohn proceeds alone or as a class representative. Although appellant insisted at argument that the scope of the relevant evidence would be primarily confined to Kohn's own contact with the firm if she proceeded on an individual basis, we cannot agree with this circumscribed relevancy assessment. The Supreme Court, in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a private, non-class action challeging employment discrimination, stated:
 
 
 30
 Other evidence that may be relevant to any showing of pretext (for what is in reality a discriminatory employment practice) includes . . . petitioner's general policy and practice with respect to minority employment. On . . . (this) point, statistics as to petitioner's employment policy and practice may be helpful to a determination of whether petitioner's refusal to rehire respondent in this case conformed to a general pattern of discrimination against blacks. Jones v. Lee Way Motor Freight, Inc., 431 F.2d 245 (CA10 1970); Blumrosen, Strangers in Paradise: Griggs v. Duke Power Co., and the Concept of Employment Discrimination, 71 Mich.L.Rev. 59, 91-94 (1972). In short, on the retrial respondent must be given a full and fair opportunity to demonstrate by competent evidence that the presumptively valid reasons for this rejection were in fact a coverup for a racially discriminatory decision.
 
 
 31
 Id. at 804-805.
 
 
 32
 The final judgment rule is a salutary principle of long-standing duration. See generally 9 J. Moore, Federal Practice P110.06 et seq. (2d ed. 1973). At a time when our appellate calendars are overflowing, the incisive words of Mr. Justice Frankfurter are particularly worthy of repetition:
 
 
 33
 Finality as a condition of review is an historic characteristic of federal appellate procedure. It was written into the first Judiciary Act and has been departed from only when observance of it would practically defeat the right to any review at all. Since the right to a judgment from more than one court is a matter of grace and not a necessary ingredient of justice, Congress from the very beginning has, by forbidding piecemeal disposition on appeal of what for practical purposes is a single controversy, set itself against enfeebling judicial administration. Thereby is avoided the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment. To be effective, judicial administration must not be leaden-footed.
 
 
 34
 Cobbledick v. United States, 309 U.S. 323, 324-325, 60 S.Ct. 540, 541, 84 L.Ed. 783 (1940).
 
 
 35
 It is readily apparent that we do not have before us one of those exceptional instances which compels disregard of the sound policy of finality. Accordingly, the appeal is dismissed.
 
 
 
 *
 United States Supreme Court, retired, sitting by designation
 
 
 [1]
 See e.g. Herbst v. International Telephone and Telegraph Corp., 495 F.2d 1308 (2d Cir. 1974); Shayne v. Madison Square Garden Corp., 491 F.2d 397 (2d Cir. 1974), Eisen v. Carlisle & Jacquelin, 479 F.2d 1005 (2d Cir.), cert. granted, 414 U.S. 908, 94 S.Ct. 235, 38 L.Ed.2d 146 (1973) (Eisen III); Korn v. Franchard Corp. and Milberg v. Western Pacific R.R., 443 F.2d 1301 (2d Cir. 1971); Caceres v. International Air Transport Association, 422 F.2d 141 (2d Cir. 1970); City of New York v. International Pipe & Ceramics Corp., 410 F.2d 295 (2d Cir. 1969); Green v. Wolf Corp., 406 F.2d 291 (2d Cir. 1968), cert. denied, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); Eisen v. Carlisle & Jacquelin, 370 F.2d 119 (2d Cir. 1966), cert. denied, 386 U.S. 1035, 87 S.Ct. 1487, 18 L.Ed.2d 598 (1967) (Eisen I); Hackett v. General Host Corp., 455 F.2d 618 (3d Cir.), cert. denied, 407 U.S. 925, 92 S.Ct. 2460, 32 L.Ed.2d 812 (1972); Graci v. United States, 472 F.2d 124 (5th Cir.), cert. denied, 412 U.S. 928, 93 S.Ct. 2752, 37 L.Ed.2d 155 (1973); Gosa v. Securities Investment Co., 449 F.2d 1330 (5th Cir. 1971) (per curiam); Walsh v. City of Detroit, 412 F.2d 226 (6th Cir. 1969) (per curiam); King v. Kansas City So. Industries, Inc., 479 F.2d 1259 (7th Cir. 1973) (per curiam); Thill Securities Corp. v. New York Stock Exchange, 469 F.2d 14 (7th Cir. 1972); Falk v. Dempsey-Tegeler & Co., 472 F.2d 142 (9th Cir. 1972); Gerstle v. Continental Airlines, Inc., 466 F.2d 1374 (10th Cir. 1972)
 
 
 [2]
 In granting certiorari in Eisen III, see note 1 supra, the Supreme Court requested the parties 'to brief and argue . . . (the) jurisdiction of the Court of Appeals.' 414 U.S. 908, 93 S.Ct. 2752, 37 L.Ed.2d 155 (1973). The appeal was argued on February 25, 1974. 42 U.S.L.W. 3493 (U.S. Mar. 5, 1974)
 
 
 [3]
 Although the court in Eisen III noted its view that orders granting class standing were appealable, see Eisen III, supra, 479 F.2d at 1007 n. 1, the court apparently considered its power to review Judge Tyler's order sustaining the class action allegations to flow from its retention of jurisdiction following remand of the case for reconsideration and specific findings in Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 570 (2d Cir. 1968) (Eisen II). See Eisen III, supra, 479 F.2d at 1007
 
 
 [4]
 Now Rogers & Wells
 
 
 [5]
 Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq
 
 
 [6]
 Reconsideration of our 'death knell' doctrine or its extension in Herbst would seem particularly inappropriate at this time, in light of Eisen III's sub judice status in the Supreme Court. See note 2 supra. See also Shayne v. Madison Square Garden Corp., supra, 491 F.2d at 401
 
 
 [7]
 See Title VII, 706(d), of the Civil Rights Act of 1964, 42 U.S.C. 2000e-5(e). Although the time for filing a complaint with the EEOC was extended by a 1972 amendment to the Act, neither party claimed that the amended statute applied to this case. Kohn v. Royall, Koegel & Wells, 59 F.R.D. 515, 517 n. 1 (S.D.N.Y.1973)
 
 
 [8]
 Judge Lasker accepted Royall, Koegel's contention that since it was a common and well known practice for large New York law firms to extend offers of employment for the following summer by December 15, Kohn must be presumed to have known by that date, at the latest, that she would not receive an offer from Royall, Koegel. We reiterate that we do not pass judgment on this or any other aspect of the merits of this case
 
 
 [9]
 We note that appellant did not seek certification of the question whether class action status was properly granted. See Zahn v. International Paper Co., 63 F.R.D. 430, 434 (D.Vt.1971), aff'd, 469 F.2d 1033 (2d Cir. 1972), aff'd, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973)
 
 
 [10]
 Notice of appeal was filed in the district court on April 4, 1973. Judge Lasker's order denying the motions for certification and reargument was entered June 25, 1973
 
 
 [11]
 The Fifth Circuit, however, has apparently adopted a somewhat modified version of the 'death knell' rule. E.g., Graci v. United States, 472 F.2d 124, 126 (5th Cir.), cert. denied, 412 U.S. 928, 93 S.Ct. 2752, 37 L.Ed.2d 155 (1973); Miller v. Mackey Int'l, Inc., 452 F.2d 424, 427, n. 3 (5th Cir. 1971). See also Falk v. Dempsey-Tegeler & Co., 472 F.2d 142 (9th Cir. 1972)
 
 
 [12]
 On the other hand, the Sixth and Seventh Circuits have held that orders granting class status are not appealable. Walsh v. City of Detroit, 412 F.2d 226 (6th Cir. 1969) (per curiam); Thill Securities Corp. v. New York Stock Exchange, 469 F.2d 14 (7th Cir. 1972)
 
 
 [13]
 Judge Danaher concurred dubitante in a separate opinion. Judge Mulligan, also concurring in a separate opinion, expressed 'grave doubt that this order granting class action status is appealable . . . (but was) not inclined to depart from Eisen III which is now on review in the Supreme Court.' Herbst v. International Telephone and Telegraph, supra, 495 F.2d at 1325. (Mulligan, J., concurring)
 
 
 [14]
 Appellant's third line of attack would equally involve us in an issue fundamental to an evaluation of the merits-- the applicability of the 'continuing violation' theory to the facts of this case. See Brief of Appellant, Point III, pp. 29-32. In effect, therefore, appellant would obtain interlocutory review of an order-- in this instance, its unsuccessful motion to dismiss-- which is otherwise clearly not appealable at this preliminary stage in the litigation