**Samuel PARKINSON, as Custodian for Andrew Parkinson, et al., Plaintiffs-Appellees,**

**v.**

**APRIL INDUSTRIES, INC., et al., Defendants-Appellants, and Alex M. Parker, Defendant.**

**Nos. 1288, 520, Dockets 74–2058, 74–2214.**

United States Court of Appeals, Second Circuit.

Argued Jan. 17, 1975.

Decided June 30, 1975.

---

Edward Labaton, Douglas A. Cooper, Shatzkin, Cooper, Labaton, Rudoff & Bandler, New York City, for plaintiffs-appellees.

Wilbur G. Silverman, Jamaica, N. Y., for defendants-appellants.

Before WATERMAN, FRIENDLY and GURFEIN, Circuit Judges.

WATERMAN, Circuit Judge:

The plaintiffs filed a complaint on June 25, 1973 in the United States District Court for the Southern District of New York alleging that the defendants April Industries, Inc. (April), and several of its officers, artificially inflated the earnings and prospects of the company through the use of false and misleading statements, thereby, in violation of Rule 10b–5 under the Securities Exchange Act of 1934, 17 CFR 240.10b–5, manipulating the market price of the company's stock. In general the alleged misrepresentations concern April's third quarter earnings statement, its predictions of earnings for 1972, and its ability to obtain long-term financing. The complaint asserts that beginning in June 1972 and continuing through December 18, 1972, April issued financial reports, predictions and releases directly, and also through securities analysts, intending that the statements would be disseminated to the investing public and with the knowledge that the investing public would rely upon such information.

Among the statements published were predictions that April would have net profits of $1,890,000 in 1972 and a profit of $2,554,000 in 1973, and also that the earnings in each of the first three quarters of 1972 were substantial. On December 17, 1972 April corrected its report for the first nine months period ending September 30, 1972 and stated a loss for the three months period ending September 30, 1972. On April 11, 1973 April announced that it had sustained a net loss of $250,270 for the year ending December 31, 1972.

Two of the named plaintiffs claim that they purchased shares of April stock on or about July 16, 1972 in reliance upon an oral statement by a securities analyst who subsequently published a report on the company in August 1972. Another named plaintiff purchased shares in late November 1972, and the fourth plaintiff purchased shares in early December 1972. These individuals acquired the stock at prices ranging from 9⅛ to 13⁵⁄₁₆. Two of the named plaintiffs later sold their shares at 4¾, and at the commencement of the present action the stock was selling for approximately $2 a share. In their motion for class action status, the plaintiffs proposed to represent all persons who purchased shares of April common stock between June 1, 1972 and December 18, 1972, the period during which the alleged false and misleading statements were made. The plaintiffs infer from the volume of the shares traded during this period that there are at least 500 members of such a class.

Judge Knapp, the district court judge below, in an order dated July 1, 1974, granted the named plaintiffs' motion to proceed as a class action. The trial judge found that the prerequisites of Fed.R.Civ.P. 23(a) were met: the class is so numerous that joinder of all members is impracticable; there appear to be questions of law or fact common to the class; the plaintiffs' claims are typical of the class; and the interests of the proposed class will be adequately protected. He found that common questions would predominate over individual questions and that a class action would be superior to other available adjudicative methods, and held that the action was properly a class action under Rule 23(b)(3).

Predictably, two issues are raised on this appeal: (1) whether the order granting class action status is an appealable order; and (2) if appealable, whether the order below was properly entered. As

we hold that the order is nonappealable and accordingly dismiss the appeal, we do not reach the second issue.

In this connection, as a preliminary matter to a further exposition of our position, perhaps it may be useful to state the significant general policies contained within the "final judgment" rule which form the backdrop and the guide for us in deciding the specific issue raised on this appeal which we find to be the determinative issue.

The order below is not a final order of a United States District Court, 28 U.S.C. § 1291, and unless the order falls within exceptions to this long-time statutory limitation Congress has placed upon the appellate jurisdiction of the Courts of Appeals, we are not authorized to take jurisdiction of the present appeal.

Appellants recognize that the order below granting the plaintiffs' motion is not a "final decision," but they contend that a district court order granting the motion of a plaintiff that his individually initiated action be designated a "class action" results in such a hardship on a defendant that it justifies a further broadening of the exception to the final decision or "final judgment" rule which the Second Circuit has recognized in this area; and justifies the allowance of an immediate appeal. We find this position untenable in this particular case.

The jurisdiction of the Courts of Appeals to review district court orders extends to "all final decisions" of the federal district courts. 28 U.S.C. § 1291. This requirement that an order not be reviewable unless it is a final judgment order serves a variety of goals. A consistently articulated concern by courts is that adherence to it avoids the unnecessary delays piecemeal litigation creates, *Catlin* v. *United States,* 324 U.S. 229, 65 S.Ct. 631, 89 L.Ed. 911 (1945); *Cobbledick* v. *United States,* 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940); Note, 75 Harv.L.Rev. 351 (1961), and that the delaying of any appeal until entry of a final judgment order combines in that one appeal all stages of the case's proceedings that may effectively be re-

viewed. *Cohen* v. *Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Moreover, the finality rule serves goals other than the elimination of delays and the conservation of judicial energy; it also serves to protect "the effective conduct of litigation" by providing a "means for achieving a healthy legal system," *Cobbledick* v. *United States, supra,* 309 U.S. at 326, 60 S.Ct. at 541, and it is an important tool in maintaining the appropriate relationship between appellate and district courts and in preserving the respective functions of each. The opportunity given the reviewing court to view the entire controversy with the perspective the completed proceedings provides enhances the likelihood of sound review. The district courts are permitted to control the progress of the litigation in their courts without frequent step-by-step intrusions by the appellate courts, intrusions which it has been suggested might engender a debilitating lessening of respect for the capabilities of district judges. Note, 75 Harv.L.Rev. 351 (1961); Note, 70 Colum. L.Rev. 1292 (1970). Also, the rule operates to limit the absolute number of appeals, a consequence of ever-increasing importance to the proper functioning of the federal judiciary. Cf. *Donlon Industries, Inc.* v. *Forte,* 402 F.2d 935 (2 Cir. 1968); see, generally, Carrington, Crowded Dockets and the Court of Appeals: The Threat to the Function of Review and the National Law, 82 Harv.L.Rev. 542 (1969).

By and large, the final judgment rule serves these interests well, and it is only in some exceptional instances that other competing considerations are sufficiently compelling to justify any relaxation of the rule's strict operation. In *Eisen* v. *Carlisle & Jacquelin,* 417 U.S. 156, 171, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) the Supreme Court noted:

The inquiry requires some evaluation of the competing considerations underlying all questions of finality—"the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the oth-

er." *Dickinson* v. *Petroleum Conversion Corp.*, 338 U.S. 507, 511, 70 S.Ct. 322, 324, 94 L.Ed. 299 (1950).

Giving the final judgment rule a "practical rather than a technical construction," *Cohen* v. *Beneficial Industrial Loan Corp., supra*, 337 U.S. at 546, 69 S.Ct. at 1226, has provided the courts with the flexibility necessary to avoid the potential harm which could result from a persistent adherence to the letter of the rule.[1]

Appellants contend that orders designating a class status for plaintiffs create obvious hardships upon defendants, and these hardships warrant the establishment of the broad exception to the final judgment rule which they advocate, and demand that an immediate appeal of class designation orders be permitted. Appellants argue also that a class designation order has substantial effects beyond the burdens imposed upon defendants. Indeed, separate considerations do surround class designation orders and these considerations do present intractable difficulties to the task of providing, on the one hand, full sway to the policies of the final judgment rule, and of providing, on the other hand, just treatment to individual litigants, while a court is progressing a class action.

We note that the nature of class designation orders differs from the nature of other situations in which judicial exceptions to the final judgment rule have been authorized. The granting of a class designation is in no sense an effective termination of any aspect whatever of the litigation, but only directs the form in which the action will proceed. The initial order is strictly provisional and by the terms of Rule 23(c)(1) "may be altered or amended before the decision on the merits." An order granted prior to discovery may be reevaluated on the basis of facts emerging from a fuller record, and a decision by an appellate court upon an appeal from the initial order would not settle the propriety of the designation once and for all because new information might well require a revision of the original order by the district court. The possible likelihood of successive appeals on the same issue, a concern which lies at the heart of the final judgment rule, exists. See *Weight Watchers of Philadelphia, Inc.* v. *Weight Watchers, International, Inc., supra;* Note, 42 Geo.Wash.L.Rev. 621 (1974).

There are, however, countervailing factors tending to support the appellants' position. An appellate court, in reviewing a final decision on substantive issues, would be reluctant to upset the class status after the expenditure of the time and effort the parties and the district court expended in reaching that final decision. Thus, deferring review until after the entry of a final judgment may well prevent any effective review at all of the class action designation. *Cf. City of New York* v. *International Pipe and Ceramic Corp.*, 410 F.2d 295, 301 (2 Cir. 1969) (Hays, J., dissenting).

Appellants argue that an order granting plaintiffs the class action status imposes such staggering burdens on a defendant that a prompt appeal should lie lest an erroneously entered order force a

---

1. The most prominent exception to the general rule of finality is the collateral order rule of Cohen which has been applied in a variety of situations held to be appropriate for immediate review. See 9 J. Moore, Federal Practice ¶ 110.10 (2d ed. 1974) for application of this rule. Indeed, the appealability of denials of class designation arising from application of the so-called "death knell" doctrine stems from the collateral order doctrine. *Eisen* v. *Carlisle & Jacquelin* (Eisen I), 370 F.2d 119 (2 Cir. 1966), *cert. denied*, 386 U.S. 1035, 87 S.Ct. 1487, 18 L.Ed.2d 598 (1967). However, Courts of Appeals have proved to be extremely sensitive about unduly expanding the Cohen doctrine, "lest this exception swallow the salutary 'final judgment' rule." *Weight Watchers of Philadelphia, Inc.* v. *Weight Watchers International, Inc.*, 455 F.2d 770, 773 (2 Cir. 1972). See, also, *Donlon Industries, Inc.* v. *Forte, supra*; *American Express Warehousing, Ltd.* v. *Transamerica Ins. Co.*, 380 F.2d 277 (2 Cir. 1967); *Hackett* v. *General Host Corporation*, 455 F.2d 618 (3 Cir.), *cert. denied*, 407 U.S. 925, 92 S.Ct. 2460, 32 L.Ed.2d 812 (1972). This restrictive attitude is appropriate in balancing the various factors of all exceptions to the final judgment rule.

defendant to run a harrowing gantlet. Admittedly the impact of large plaintiff class actions upon defendants is great. The expense of defense increases with the introduction of the enlarged class, with the broadening of the substantive issues, and with the preliminary pretrial skirmishing. Of perhaps greater importance in realistic terms is the increase in potential liability which could force the defendant to settle plaintiffs' claims regardless of the merits of the plaintiffs' cases. See *Herbst v. International Telephone and Telegraph Corp.*, 495 F.2d 1308 (2 Cir. 1974); *Morris v. Burchard*, 51 F.R.D. 530 (SDNY 1971); American College of Trial Lawyers, Report and Recommendations of the Special Committee on Rule 23 of the Federal Rules of Civil Procedure (1972); Handler, The Shift from Substantive to Procedural Innovations in Antitrust Suits—the Twenty Third Annual Antitrust Review, 71 Colum.L.Rev. 1 (1971).[2]

Another ground advanced in support of a general right to an immediate review of class designation orders involves the resultant benefits to sound judicial administration. See *Herbst v. International Telephone and Telegraph Corp., supra; General Motors Corporation v. City of New York*, 501 F.2d 639, 656 (2 Cir. 1974) (Mansfield, J., concurring). The considerations underlying this ground are twofold: (1) the burdens imposed on district judges; and (2) the responsibilities of appellate courts to give guidance in the developing sphere of class litigation.

Doubtlessly the district judge shoulders unenviable tasks in the conduct of class litigation. The actual and potential burdens of the trial judge in the maintenance and supervision of large class actions are colossal, and immediate review of class designations would relieve the trial judge of these responsibilities in cases found to be inappropriate upon interlocutory appeal. However, trial judges are constantly confronted with interlocutory decisions, which, if erroneous, may create unnecessary and time-consuming consequences.[3] An appellate court's solicitude to prevent the unproductive effort which an erroneous order may create ought not to warrant an out-of-time intrusion by the appellate court into the proper sphere of the trial judge. The line between helpful guidance and noxious interference is a narrow one, and one goal of the final judgment rule is that of maintaining the appropriate relationship between the respective courts. Note, 75 Harv.L.Rev. 351 (1962). This goal, in the absence of most compelling reasons to the contrary, is very much worth preserving.

Another related competing consideration is that an immediate interlocutory review of a class designation order would provide a mechanism which would enable the appellate courts in the exercise of their supervisory powers to fashion class designation guidelines for the

---

**2.** The facts of this case, which show that the class determination will have little effect on the anticipated course of litigation, demonstrate that it is perhaps only in sprawling class actions that defendants incur substantial additional burdens of defense. Here the defined class, by recent standards, is small. The complaint is limited to but a handful of misleading reports published by securities analysts and to but one financial report published by the company itself. Inclusion of the class plaintiffs will result in a slight increase in the number of depositions required to be noticed, for a greater number of securities analysts' reports will then become relevant. Discovery proceedings and other pretrial activity will create only a little additional expense to the defendants, and the plaintiffs will of course assume the cost of notifying the class. The size of potential recoveries is difficult on the present record to estimate, but in any event will not be devastatingly large.

**3.** For example, an order denying a motion for summary judgment or one granting a motion for a new trial are not immediately appealable even though the entry of an erroneous order may require additional expense and effort on the part of both litigants and the district court. See *Compagnie Nationale Air France v. Port of New York Authority*, 427 F.2d 951 (2 Cir. 1970); *Bigart v. Goodyear Tire & Rubber Company*, 361 F.2d 317 (2 Cir. 1966); *Chappell & Co. v. Frankel*, 367 F.2d 197 (2 Cir. 1966).

district courts. *Herbst* v. *International Telephone and Telegraph, supra; General Motors Corporation* v. *City of New York, supra,* 501 F.2d at 656 (Mansfield, J., concurring); Note, 42 Geo.Wash.L. Rev. 621 (1974). In these opinions it was anticipated that in this manner authoritative appellate court resolutions of recurring problems in class litigation would result and that these resolutions would facilitate the adoption of uniform and workable standards in this new area of judicial concern. It was anticipated that among the recurring problems is that of whether a class action should be designated. In *Herbst,* however, the Court after finding the order there designating a class to be immediately appealable, then affirmed the trial judge's order by finding that the trial judge had not abused his discretion. It appears unlikely that many class designation orders would be so egregiously erroneous as to constitute abuses of discretion, and the latitude provided a reviewing court by this standard of review suggests that appellate consideration would furnish scant guidelines to judges struggling with class action designations. Cf. *Donlon Industries, Inc.* v. *Forte, supra; Bancroft Nav. Co.* v. *Chadade Steamship Co.,* 349 F.2d 527 (2 Cir. 1965). Moreover, the desire for beneficial guidance and uniformity may be poorly served by providing for an immediate appeal of a grant of class designation, for Rule 23(c)(1) requires that the district court make the class action determination "as soon as practicable," and, typically, the determination will be made before extensive discovery and before development of a record adequate enough to insure careful appellate consideration on review of the merits of the order.[4] In such a posture the results of review are likely to be far less than enlightening to the judge whose order has been appealed.

If it is desirable to hand down supervisory guidance standards in other class action issues, other avenues of appeal are available. The Supreme Court in *Eisen* recognizes the vitality of the collateral order doctrine when such issues are involved, and also recognizes that significant and unsettled questions unrelated to the main issue in a class action case may be subject to interlocutory appellate review. This doctrine, coupled with the certification procedure of 28 U.S.C. § 1292(b)[5] provides mechanisms for appellate courts to formulate authoritative guidelines to assist trial courts in resolving the recurring problems they are faced with in the handling of class action litigation.

■ The competing considerations above set forth have, as indicated, bedevilled this court in its efforts to formulate appropriate standards by which to test the appealability of class action des-

4. The motion for class determination must be made within 60 days under the applicable local rules, Civil Rule 11A(c), and although the district court may postpone decision of the motion pending discovery, the emphasis is on early determination. *Wolfson* v. *Solomon,* 54 F.R.D. 584 (SDNY 1972). See, also, *Berland* v. *Mack,* 48 F.R.D. 121 (SDNY 1969).

5. Another alternative is that of mandamus, but mandamus of course is a narrowly circumscribed discretionary remedy, 75 Harv.L.Rev. 351, 375–378. Professor Kaplan, Reporter of the Advisory Committee which drafted revised Rule 23, urged liberal use of the § 1292(b) procedure in the early period of interpretation. Kaplan, Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I). Although there may be difficulties inherent in the use of § 1292(b) certifications in connection with class action determinations, see 7A Wright & Miller, Federal Practice and Procedure § 802; Note, 70 Colum.L.Rev. 1292 (1970), we recognize that in this area interlocutory assistance in some circumstances might be timely and desirable, and we trust that nothing said in this opinion will discourage any district judge, when faced with an issue in a class action which he believes deserves timely appellate consideration, from utilizing the mechanism of 28 U.S.C. § 1292(b) available to him. In fact, this method is obviously the most efficient way of securing interlocutory appellate adjudication, and perhaps should be the only way by which a class action designation issue could interlocutorily reach an appellate court. See *Hackett* v. *General Host Corp.,* 455 F.2d 618, 621–623 (3 Cir.), cert. denied, 407 U.S. 925, 92 S.Ct. 2460, 32 L.Ed.2d 812 (1972).

ignation orders.[6] However, following a short evolutionary period, the court has now laid down a rule that, before the court will entertain such an appeal, three requirements must be affirmatively satisfied:

(1) whether the class action determination is "fundamental to the further conduct of the case";

(2) whether review of that order is "separable from the merits";

(3) whether the order will cause "irreparable harm to the defendant in terms of time and money spent in defending a huge class action".

. . .

*General Motors Corporation* v. *City of New York, supra,* 501 F.2d at 644; *Kohn* v. *Royall, Koegel & Wells,* 496 F.2d 1094, 1098 (2 Cir. 1974). See, also, *Herbst* v. *International Telephone and Telegraph Corp., supra; Eisen* v. *Carlisle & Jacquelin,* 479 F.2d 1005 (2 Cir. 1973) (Eisen III).[7] In applying this "three-pronged"

---

**6.** In cases involving denials of class designations the Second Circuit developed the death knell exception to the finality rule and has allowed immediate appeal in cases in which the named plaintiff's claim was so small that continued prosecution of the complaint was improbable. See *Eisen* v. *Carlisle and Jacquelin* (Eisen I) *supra; Green* v. *Wolf Corp.,* 406 F.2d 291 (2 Cir. 1968); *Korn* v. *Franchard Corp.,* 443 F.2d 1301 (2 Cir. 1972). The death knell doctrine has been variously criticized. In *Shayne* v. *Madison Garden Corp.,* 491 F.2d 397 (2 Cir. 1974), the court noted the "rumblings of disapproval" within the Second Circuit, but chose to postpone reconsideration of the death knell doctrine because of the pendency of Eisen III in the Supreme Court. The doctrine has been criticized as an overly mechanical test which focuses too narrowly on the individual plaintiff. *City of New York* v. *International Pipe and Ceramic Corp., supra,* 410 F.2d at 300 (Hays, J., dissenting); *Hackett* v. *General Host Corporation, supra,* 455 F.2d at 626, (Rosenn, J., dissenting); Note, 70 Colum.L.Rev. 1292 (1970). Other circuits have rejected the death knell doctrine in toto, *Hackett* v. *General Host Corporation, supra; King* v. *Kansas City Southern Industries, Inc.,* 479 F.2d 1259 (7 Cir. 1973), or in part, *Graci* v. *United States,* 472 F.2d 124 (5 Cir.), cert. denied, 412 U.S. 928 (1973); *Falk* v. *Dempsey-Tegeler & Co., Inc.,* 472 F.2d 142 (9 Cir. 1972).

Judge Friendly, concurring in *Korn* v. *Franchard, supra,* 443 F.2d at 1307, expressed concern that this doctrine did not provide a workable test, and also that it did not "afford equality of treatment as between plaintiffs and defendants." In Eisen III the court reviewed various orders of the district court on the ground that jurisdiction had been retained on the previous remand. In a footnote to the opinion the court explained that it had retained jurisdiction because of "the doubt engendered by the 'death knell' opinion, Eisen I" for that language might be construed as denying appealability in cases involving grants of class designation. The court picked up Judge Friendly's suggestion in

*Korn,* and came out broadly for interlocutory review of both the grant and the denial of class designation motions. The reasons requiring this interpretation of Eisen I, the court stated, were three: the fundamentality of the class action determination, the separability of the order, and the irreparable harm to the defendant.

In *Herbst* v. *International Telephone & Telegraph, supra,* 495 F.2d at 1312–1313, Judge Lumbard writing for the court expressly adopted the reasoning of Eisen III dealing with the appealability of class designations and came out strongly for a broad right of immediate review:

We believe that immediate review of orders authorizing class actions will aid the district courts in disposing of these cases and promote the sound administration of justice.

\* \* \* \* \* \*

We believe that in the exercise of our supervisory powers over the administration of justice in the district courts it is desirable for us to review orders authorizing class actions before the parties and the district courts expend large amounts of time and money in managing them.

Two other members of the panel, in separate concurrences, indicated that each of them had strong reservations as to interlocutory appealability, but concurred in the result because of the then sub judice status of Eisen III before the Supreme Court.

**7.** Eisen III was reversed by the Supreme Court on other grounds, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Before the Supreme Court the parties had briefed and argued the jurisdiction of the Second Circuit to review the orders of the district court authorizing the suit to proceed as a class action. The Court sustained the appellate court's jurisdiction on the allocation of notice costs, but as that issue was "dispositive of [the] petitioner's attempt to maintain the class action as presently defined," the Court did not reach the question of the Second Circuit's jurisdiction on other issues. *Id.* at 172 n. 10, 94 S.Ct. at 2150. On

test a re-emerging emphasis on the policies of finality is clearly discernible.

In *Kohn v. Royall, Koegel & Wells, supra,* an order granting class status involved a 23(b)(2) suit alleging sex discrimination in the hiring practices of a law firm and seeking injunctive relief. The three factors which had been advanced in *Eisen III* and *Herbst* for justifying review of all class determinations became factors to be analyzed under the circumstances of the particular case. The standard to apply in the first inquiry, the fundamentality of the order, was, the court in *Kohn* stated, "whether the action's viability turns on the class action determination." *Supra,* 496 F.2d at 1099. Our court in applying this standard found that none of the requirements had been met. The plaintiff would continue the suit without reference to the class determination, and therefore the order was not fundamental to the further conduct of the case; review of the order would require that the appellate court inquire about the presence of common questions and the ability of the plaintiff to represent the class, which inquiries would take the court into the merits of the case, i. e., the challenged internal hiring practices of the defendant, and therefore the order was not separable from the merits; and finally the incremental cost of the defense of the suit as a class action would be an insignificant increment over the cost of defending the individual's suit.

In *General Motors Corporation v. City of New York, supra,* New York sued General Motors alleging that the company had violated the antitrust laws by monopolizing the market for city buses. New York had a claim in excess of $12 million, enough to sustain its individual action, but it also sought to represent a class of 177 members, whose inclusion

would not cause significant incremental hardship to the defendant. General Motors argued that the requirements of Rule 23(b)(3) had not been met, and therefore the granting of the class action designation was erroneous. However, examination of the common questions of market competition, economic power, and behavior had an "obvious relationship to the very issues critical to the success" of the underlying claim, and therefore the order was not "separable from the merits." *Id.,* 501 F.2d at 645. The court found in the Supreme Court's decision in *Eisen v. Carlisle & Jacquelin, supra,* a reaffirmation of the exceptional circumstances required to justify departure from the final judgment rule. General Motors' contention that Rule 23(b)(3)'s requirements had not been satisfied was not analogous to the "unprecedented and extraordinary" notice procedure reviewed in *Eisen.* If review were granted here, the court at 647 of 501 F.2d stated:

> Accordingly, we would review here not a finite and conclusive determination of judicial power—e. g., the power to shift notice costs and forego individualized notice, as in Eisen, or the power to dispense with security, as in Cohen—but a discretionary decision, the propriety of which will necessarily vary from case to case. That this distinction is of fundamental importance in the calculus of appealability was plainly acknowledged in Cohen itself.

In *Kohn* and *General Motors* the application of the three-pronged test marks a renewed emphasis on the policies of finality. As General Motors recognized, this result is encouraged, at least inferentially, by the Supreme Court's treatment of the jurisdictional questions presented in *Eisen v. Carlisle & Jacquelin (Eisen III), rev'd on other grounds,*

the issue of the allocation of notice costs the Court found the jurisdiction controlled by the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp., supra.* Like the waiver of posting security in Cohen, the allocation of notice costs was a final order on an issue collateral to the main issues of the case. In *Ei-*

*sen,* although the Supreme Court neither approved or disapproved of the death knell doctrine, which had been the basis of appellate jurisdiction in Eisen I, the Court did emphasize the policies behind the final judgment rule and the "small class" of cases excepted by the Cohen doctrine.

417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).[8]

This test has attempted to promote the policies of the final judgment rule while recognizing that extraordinary circumstances occasionally present issues in class litigation which require prompt appellate attention. The court, while creating the three-pronged test, has interpreted its elements most restrictively, an approach which upon analysis, we find to be appropriate in light of the sound policies of finality. Indeed, the three-pronged test, narrowly interpreted, does not mark a departure from the final judgment rule, nor does it create a new exception to that general rule, but, rather, it is a corollary to the collateral order doctrine tailored to the particular circumstances of class litigation. The previously recognized judicial exceptions to finality indicate that in extraordinary situations the resolution of an interlocutory order which has sufficient indicia of finality, which is collateral or separable from the main issues, and which is insusceptible to merger in a final decision, may be sufficiently important to warrant an immediate interlocutory review.

■ Our court in *General Motors* recognized that an appellant would not be able to satisfy the three-pronged test for an immediate interlocutory appeal if he only questioned the propriety of the discretionary ruling of a trial judge that the requirements of Rule 23(b)(3) had been met.[9] April here argued only that plaintiffs failed to establish that there is sufficient merit in the plaintiffs' complaint for the plaintiffs to act as class representatives, that there is insufficient indication that the class is so numerous that joinder of all its members is impracticable, and that common questions do not predominate over individual questions. The appellants' claims concern only the discretionary ruling of the district judge that the prerequisites of Rule 23(a) and the requirements of Rule 23(b)(3) have been satisfied. This ruling is far from being an "unprecedented and extraordinary" one, and we are not called upon to review "a finite and conclusive determination of judicial power." *General Motors, supra,* 501 F.2d at 647.

We therefore dismiss the appeal.

FRIENDLY, Circuit Judge (concurring):

I agree that, for the reasons developed in Judge Waterman's admirable opinion, our decisions demand dismissal of this appeal for want of appellate jurisdiction. But I would go further and hold that orders simply granting or denying class action status, as distinguished from a class action designation order, like that in *Eisen* v. *Carlisle & Jacquelin,* 417 U.S. 156, 170–72, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), which also contains provisions requiring defendants to pay money or take other action not remediable on a review of the final judgment, are appealable only under the procedure for the review of interlocutory orders provided in 28 U.S.C. § 1292(b).

Our court's first important response to the difficult problem of the appealability of class action orders under revised F.R. Civ.P. 23 was in a case involving denial of class action status and took the form of the "death-knell" doctrine, *Eisen* v. *Carlisle & Jacquelin,* 370 F.2d 119, 121 (2 Cir. 1966), *cert. denied,* 386 U.S. 1035, 87 S.Ct. 1487, 18 L.Ed.2d 598 (1967). This

---

8. See footnote 7 supra.

9. The continuing precedential validity of Herbst in view of the decisions in Kohn and General Motors is an open question which is not now before us. Herbst dealt with a variety of issues including whether the named plaintiff's claims were typical of the class and whether common questions predominated over individual questions. These issues would not, in light of the General Motors interpretation, satisfy the requirements for interlocutory appeal. Throughout the opinion in Herbst, however, there was an underlying question of the manageability of a class comprising an estimated 16,000 ITT stockholders. It may prove to be that in a sprawling class action discrete and aggravated questions of manageability will present questions so important that an immediate appeal from a class action determination will lie.

was shortly followed in *Green* v. *Wolf Corp.,* 406 F.2d 291, 295 n. 6 (2 Cir. 1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969). See also *Caceres* v. *International Air Transport Ass'n,* 422 F.2d 141, 144 (2 Cir. 1970). Although the Supreme Court's decision in *Eisen, supra,* did not expressly reject that doctrine, the Court significantly declined to sanction it; as indicated, appealability, which by this time had become one from an order granting class action status, was there sustained on the ground that the order, compelling the defendants to pay for the sending of notices, was a classic case for application of the principle of *Cohen* v. *Beneficial Industrial Loan Corp.,* 337 U.S. 541, 545–47, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), since amounts so expended would be forever lost even if defendants ultimately prevailed on the merits.

Despite its initial appeal, application of the "death-knell" doctrine began to reveal weaknesses. One was the point, raised by Judge Hays' dissent in *City of New York* v. *International Pipe & Ceramics Corp.,* 410 F.2d 295, 300–01 (2 Cir. 1969), that, in looking only at the named plaintiff, the claim of which was clearly large enough to justify continuation of the action without class action status, the doctrine ignored the death-knell sounded by the denial of such status for other members of the class having only small claims, since the remaining individual plaintiff would not, at a later point, have reason to take an appeal from the adverse class action determination. Another was the difficulty, often the impossibility, of determining when a denial of class action designation truly rang the death-knell. Although I joined in dismissing the appeal in *Milberg* v. *Western Pacific Railroad,* 443 F.2d 1301 (2 Cir. 1971), as not meeting the death-knell standard, I have later wondered whether it was realistic to expect that a stake of $8,500 (achieved only by adding to Mrs. Milberg's claim of some $1,000 her lawyer husband's claim of some $7,500) would as a practical matter justify their pressing an action under the securities

laws against two well financed corporate defendants. See also *Shayne* v. *Madison Square Garden Corp.,* 491 F.2d 397, 402 (2 Cir. 1974) (appeal from denial of class action status dismissed where individual claim was for $7,482). Finally there was the point, mentioned in my concurrence in *Korn* v. *Franchard Corp.,* 443 F.2d at 1307, that the death-knell doctrine worked only in favor of plaintiffs. Apart from the apparent inequity of this, it would seem odd that appellate courts should sometimes be able to control too grudging a reading of Rule 23 by the district courts by an appeal as of right as from a final decision but could control too expansive a one only by an appeal as from an interlocutory decision by leave.

Our court has now sought to meet this last point by the trilogy of *Herbst* v. *International Telephone & Telegraph Corp.,* 495 F.2d 1308 (2 Cir. 1974); *Kohn* v. *Royall, Koegel & Wells,* 496 F.2d 1094 (2 Cir. 1974); and *General Motors Corp.* v. *City of New York,* 501 F.2d 639, 644 (2 Cir. 1974). However, the cure may be worse than the disease. The answer to the second prong of the "three-pronged" test laid out in Judge Waterman's opinion would seem almost always to be "yes". As to the first prong, I am not sure what is meant by the class action determination being "fundamental to the further conduct of the case"; this sounds like the "death-knell" doctrine in different dress. See *General Motors Corp.* v. *City of New York, supra,* 501 F.2d at 644; *Kohn* v. *Royall, Koegel & Wells, supra,* 496 F.2d at 1099 (speaking of this prong, the court said that "a necessary though not sufficient element in the appealability equation is whether the action's viability turns on the class action determination"). The third prong, whether the order will cause "irreparable harm to the defendant in terms of time and money spent in defending a huge class action", seems to mean that there can be no appeal from the grant of class action designation unless the class is very large—a rule which, among other things, would exclude appeals on the

ground that the class was not so numerous as to make joinder of all members impracticable, F.R.Civ.P. 23(a)(1).

Admittedly the problem is not an easy one. But experience has led me to the conclusion, expressed by Judge Gibbons for the Third Circuit in *Hackett v. General Host Corp.*, 455 F.2d 618, 621–23, *cert. denied*, 407 U.S. 925, 92 S.Ct. 2460, 32 L.Ed.2d 812 (1972), that except when, as in *Eisen*, an order is appealable as of right on some other ground, the best solution is to hold that appeals from the grant or denial of class action designation can be taken only under the procedure for interlocutory appeals provided by 28 U.S.C. § 1292(b). Given a choice between the law developed in this circuit and that expressed in *Hackett*, the Seventh Circuit chose the latter, *King v. Kansas City Southern Industries, Inc.*, 479 F.2d 1259 (1973) (per curiam). The view expressed in *Hackett* was certainly the prevailing one before the 1966 revision of Rule 23, see *Caceres v. International Air Transport Ass'n, supra*, 422 F.2d at 143 & n. 5, and "contemporaneous and highly informed commentary" suggested that § 1292(b) would continue to serve as the vehicle for securing any needed clarification thereafter. *Id.* at 144, citing B. Kaplan, Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I), 81 Harv.L.Rev. 356, 390 n. 131 (1967); and ABA Special Comm., Federal Rules of Procedure, Report, 38 F.R.D. 95, 104–05 (1966). Since the need for review of class action orders turns on the facts of the particular case, this procedure is preferable to attempts to formulate standards which are necessarily so vague as to give rise to undesirable jurisdictional litigation with concomitant expense and delay. The § 1292(b) procedure permits determination whether there is to be an appeal within weeks rather than months. To be sure, since that procedure requires initial certification by the district court, there is the possibility that an obdurate judge might thwart review in a case where the court of appeals would be disposed to grant it;

but this risk must be weighed against the valuable input which district judges can make in cases of this sort and the disadvantages of any other procedure. Moreover, as said in *Hackett v. General Host Corp., supra*, 455 F.2d at 624, "If in isolated instances arbitrariness creeps in, there remains the ultimate remedy of mandamus" with respect to the grant or denial of class action status.

Since the attempts to imprison the appealability of orders granting or denying class action designation within judicially-created formulae have proved to be failures and, in my judgment, will continue to be so, we should return to the earlier wisdom.