Irving SANDERS, Plaintiff-Appellee,

v.

Leon LEVY et al., Defendants-Appellants.

Egon TAUSSIG, Plaintiff-Appellee,

v.

Sidney M. ROBBINS et al.,
Defendants-Appellants.

Michael SHAEV and Rita Shaev,
Plaintiffs-Appellees,

v.

Eric HAUSER et al.,
Defendants-Appellants.

Nos. 743, 744, 745, Dockets 75–7608,
75–7610, 75–7611.

United States Court of Appeals,
Second Circuit.

Argued May 5, 1976.

Decided June 30, 1976.

Submitted Oct. 22, 1976.

On Rehearing En Banc
Decided June 22, 1977.

Gerald Gordon, New York City (Weisman, Celler, Spett, Modlin & Wertheimer, Milton C. Weisman, New York City, of

counsel), for defendant-appellant Oppenheimer Fund, Inc.

Leon H. Tykulsker, New York City (Guggenheimer & Untermyer, Richard P. Ackerman, New York City, of counsel), for defendants-appellants Oppenheimer Management Corp., Oppenheimer & Co., Leon Levy and Jack Nash.

John F. Davidson, New York City (Thacher, Proffitt & Wood, Daniel E. Kirsch, New York City, of counsel), for defendants-appellants Edmund T. Delaney and Emanuel Celler.

Donald N. Ruby, New York City (Wolf, Popper, Ross, Wolf & Jones, Robert Kornreich, New York City, of counsel), for plaintiffs-appellees.

Samuel E. Gates, John C. Elam, Columbus, Ohio, Peter J. Holme, Jr., New York City, Richard J. MacLaury, San Fransisco, Cal., Ralph L. McAfee, New York City, Don H. Reuben, Chicago, Ill., Carl J. Schuck, Los Angeles, Cal., Marvin Schwartz, William Simon and George A. Spiegelberg, New York City, for amicus curiae American College of Trial Lawyers urging reversal.

Before HAYS and MULLIGAN, Circuit Judges, and Palmieri, District Judge.*

PALMIERI, District Judge.

Plaintiffs-appellees (plaintiffs) seek to maintain this action on behalf of certain present and former stockholders of Oppenheimer Fund, Inc. (the Fund), an investment company registered under the Investment Company Act of 1940, 15 U.S.C. § 80a–1 et seq. This is an appeal under 28 U.S.C. § 1291 from an interlocutory order holding the suit to be properly maintainable as a class action under Rule 23(b)(3), Fed.R. Civ.P., and directing the defendant-appellant (defendant) Fund to bear substantial costs in identifying the names and addresses of the class members so that plaintiffs can send them the initial notice of the pending action as required by Rule 23(c)(2), Fed. R.Civ.P.

When the motion for class determination was made, there were over 67 million shares of the Fund outstanding held by approximately 173,000 shareholders. Of the approximately 121,000 present or former shareholders who constitute the class designated by the plaintiffs, about 103,000 remain shareholders and 18,000 have sold their shares. The information needed by plaintiffs for the preparation of the notice to the members of the class, particularly the names and addresses of the class members, is contained in magnetic computer tapes kept by the transfer agent of the Fund. The extraction of this information from the tapes would require, in addition to the usual processing, the design of new computer programs. The cost of accomplishing this task was estimated by the transfer agent to be $16,580 as of October 10, 1973.

On each of the issues presented, identification costs and designation as a manageable class action, we must first decide if the issue is reviewable on appeal and, if so, then determine if the district court's decision should be upheld. Since we find that our treatment of the identification costs matter affects the designation question, we discuss the identification costs matter first.

### The Allocation of Identification Costs

■ The order requiring the Fund to bear the identification costs is appealable because it fits squarely within the collateral order doctrine of Cohen v. Beneficial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). The requirements of that doctrine are essentially twofold: first, the decision appealed from must not be "tentative, informal or incomplete," 337 U.S. at 546, 69 S.Ct. 1221, but rather it must conclusively settle a party's claim; second, the decision must involve a collateral matter that can be reviewed apart from the merits of the case but which cannot be effectively reviewed on appeal from the final judgment. In Eisen v. Carlisle & Jacquelin (Ei-

* Edmund L. Palmieri, United States District Judge, Southern District of New York, sitting by designation.

*sen IV*), 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), the Supreme Court faced the question whether this court had jurisdiction in *Eisen v. Carlisle & Jacquelin* (*Eisen III*), 479 F.2d 1005 (2d Cir. 1973) when we reviewed the district court's order imposing notice costs on the defendants. The Supreme Court decided that the order was appealable because it was " 'a final disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration with it.' " 417 U.S. at 172, 94 S.Ct. 2150, *quoting Cohen, supra*, 337 U.S. at 546–47, 69 S.Ct. 1221. *See also, General Motors Corp. v. City of New York*, 501 F.2d 639, 647 (2d Cir. 1974). We find this question of appealability controlled by *Eisen IV*.

We turn next to the merits of the order allocating identification costs. Rule 23(c)(2), Fed.R.Civ.P., provides in relevant part:

> In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.

Since this is a class action brought under subdivision (b)(3) of the rule, namely, one in which the court below found that the questions of law or fact common to the members of the class predominate over any questions affecting only the individual members, and that the class action was superior to other available methods, individual notice of the action must be sent to all class members who can be identified by name and address through a reasonable effort. *Eisen IV*, 417 U.S. at 173–77, 94 S.Ct. 2140. The cost of such notice must be borne in the first instance by plaintiff. *Id.* 417 U.S. at 177–79, 94 S.Ct. 2140; *Eisen III*, 479 F.2d 1005, 1009 (2d Cir. 1973); *Eisen II*, 391 F.2d 555, 568 (2d Cir. 1968). The authorities just cited enunciate the views of the Supreme Court and this court that, absent special circumstances, if the plaintiff does not accept this expense, the class action cannot be maintained. In the usual case, defendants may not be compelled to provide financial support for a class action against themselves.

Where, as here, the relationship between the parties is truly adversary, the plaintiff must pay for the cost of notice as a part of the ordinary burden of financing his own suit.

*Eisen IV*, 417 U.S. at 178–79, 94 S.Ct. at 2153.

The possibility that plaintiff may not be required to defray the cost of notice is still an open question in some cases. The Supreme Court declined to foreclose the possibility in "situations where a fiduciary duty pre-existed between the plaintiff and defendant, as in a shareholder derivative suit." *Eisen IV, supra*, 417 U.S. at 178, 94 S.Ct. at 2153. In addition to the derivative suit, we have suggested that there may be other similar cases in which justification might be found for holding that a representative plaintiff is not obligated to defray the cost of notice, citing "a case where a public utility corporation which regularly sends monthly bills to its current customers has been held to have overcharged its customers and the class suit is brought to compel a refund." *Eisen III*, 479 F.2d 1005, 1009 n. 5 (2d Cir. 1973). The district judge does not appear to have pursued this line of analysis and the plaintiffs have mentioned it only in passing.

Assuming that there may be cases where the imposition of notification costs on the defendant may be justified, we do not think this is such a case. The defendant Fund is not a public service monopoly with the responsibilities incumbent upon such an entity, and no finding of liability has yet been entered against it. The Supreme Court in *Eisen IV* did not attempt to elucidate the exceptional case in which a representative plaintiff might be relieved of this burden. Indeed, it did not unequivocally state that there was such a case. It did speak of the shareholder derivative suit but that apparently was by way of analogy since the derivative suit is not a class action, though

possibly akin thereto.[1] The Supreme Court also described *Eisen IV* as a case where "the relationship between the parties is truly adversary." 417 U.S. at 178, 94 S.Ct. at 2153. Possibly this was intended to contrast it with a derivative suit where the corporation, though a nominal defendant, has interests closely aligned with the plaintiff and indeed would be the beneficiary of any recovery. The equities in favor of imposing some costs on the corporation in that situation are obvious. But the Supreme Court more likely had in mind an arms-length relationship unencumbered by fiduciary duties. The relationship between the plaintiffs and the Fund is probably not "truly adversary" in the *Eisen IV* sense. Although the Fund is not in the position of the corporation in a derivative suit,[2] we may assume it had fiduciary duties to the purchases of its shares. See *Dolgow v. Anderson*, 43 F.R.D. 472, 498–99 (E.D.N.Y. 1968). But the relationship between the plaintiffs and the Fund is not non-adversarial in a manner which requires an exception to the *Eisen IV* rule on notification costs, but in a manner that makes it totally improper to impose costs on the Fund: the Fund is not a party to the class action claims.[3] No recovery is sought from the Fund in the class action. The plaintiffs have been careful to exclude the Fund itself from all allegations of wrong-doing and to

seek recovery only from its directors, its managing company and the broker-dealer firm that controls the manager. Indeed, the Fund appears to have been named as a defendant only for purposes of the derivative claims which are not of concern here. Since the Fund has no direct interest in the outcome of the class action claim, it is too remotely involved to have notification costs imposed upon it.

 Furthermore, we do not think these costs could properly be imposed on the other defendants. Even if we assume that these defendants—the directors of the Fund, its manager, and the firm that controlled the manager—had fiduciary duties to the plaintiff shareholders, that would be insufficient in our opinion to warrant imposition of notification costs on them on the facts of this case. Many of the considerations pointed to in justification for shifting the costs, see *Dolgow v. Anderson, supra*, 43 F.R.D. at 498–500; *Eisen v. Carlisle & Jacquelin*, 52 F.R.D. 253, 264–70 (S.D.N.Y. 1971), have been shown to be inappropriate. The district court may not weigh the merits and cite the strength of a plaintiff's case as justification.[4] The result in *Eisen IV* leaves no doubt that the ability of a defendant to bear the costs and the fact that, if it does not, the suit will have to be discontinued, are to be given little or no weight. The public interest in enabling the adjudication

---

1. See *Developments in the Law, Multiparty Litigation in the Federal Courts*, 71 Harv.L.Rev. 874, 943 (1958); Meyer, *The Social Utility of Class Actions*, 42 Brooklyn L.Rev. 189, 190–91 (1975).

2. Each of the three consolidated suits contains two counts—one a derivative and one a class action. The order on appeal deals only with the latter, and we are not here concerned with the derivative claims. Furthermore, the Fund would not directly benefit from a recovery by the plaintiffs.

3. The dissent apparently overlooks the fact that the costs were imposed on the Fund which is not a party to the class action claims. *Eisen IV, supra*, 417 U.S. at 178, 94 S.Ct. at 2153, makes an exception to the usual rule that the representative plaintiff must bear the cost of notice "where a fiduciary duty pre-existed between the *plaintiff* and *defendant* . . . ." (emphasis added). We may not assume that non-class member shareholders would approve

of the Fund underwriting these expenses for the benefit of other shareholders.

4. We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action.

*Eisen IV, supra*, 417 U.S. at 177, 94 S.Ct. at 2152. We have stated the matter more broadly:

But neither in amended Rule 23 nor in any other rule do we find provision for any tentative, provisional or other makeshift determination of the issues of any case on the merits for the avowed purpose of deciding a collateral matter such as which party is to be required to pay for mailing, publishing or otherwise giving any notice required by law.

*Eisen III, supra*, 479 F.2d at 1015.

of claims that could not be maintained in any other form and in having remedial statutes enforced is sharply offset by the danger, all too frequently realized, of large settlements paid irrespective of the merits of the claim in order to avoid the disastrous expenses of litigation. *Eisen III, supra,* 479 F.2d at 1019. Even the contention that the defendant has an interest in obtaining the effects of res judicata against all members of the class often rings untrue. If the class action proceeds, the defendant may pay large sums in defending claims that might not otherwise have been brought due to the limited interest of the individual plaintiffs.[5] In sum, we perceive no special circumstances in this case that would warrant shifting the costs of notification from the plaintiffs to any of the defendants. We have suggested before that the vindication of valid class claims not maintainable under Rule 23(b)(3) or otherwise is a matter for Congress. *Eisen III,* 479 F.2d at 1019.

The justification that the District court found for imposing some costs on the defendant Fund was twofold. First, it found the expense was "relatively modest," apparently in relation to the assets of the Fund which exceeded $500,000,000. This is an inappropriate consideration in the determination of the incidence of notice costs, even if the costs force the plaintiffs to discontinue as in *Eisen IV.* The second reason given was that "it is defendants who are seeking to have the class defined in a manner which appears to require the additional expense." This bears some analysis. Plaintiffs defined the class as all persons who purchased shares of the Fund during the period March 28, 1968 to April 24, 1970. Discovery then revealed that this class consisted of approximately 121,000 persons, 103,000 of whom were still Fund shareholders, and that the cost of the required computer operations to extract the names and addresses of the class members from the lists of past

and present Fund shareholders would be approximately $16,580. Plaintiffs then sought to redefine the class to exclude the 18,000 persons included in the original class who no longer hold Fund shares, and to send the required notice by inserting it in a regular mailing to all present Fund shareholders. The defendants objected to the exclusion of the 18,000 persons, presumably because it would limit the res judicata effect of the suit. The district court reached the same conclusion but for a different reason, holding that these persons could not be excluded because to do so "would involve an arbitrary reduction in the class."[6] The class as originally defined was found to constitute the proper class for reasons unrelated to the interests of the defendants. It would thus be inconsistent to say that it is a proper class only if the defendants pay the costs. The two issues are distinct.

The defendants also opposed sending the notice to the 68,000 shareholders who are not class members, expressing concern that such a mailing could lower investor confidence and trigger a wave of redemptions. The district court did not pass on the validity of this concern; it merely noted that the concern was obviated by having the defendant cull the non-members from the lists. However, there is evidence in the record to substantiate the concern. Plaintiffs assert that the Fund shareholders have been advised of the nature and pendency of this suit 13 times since 1970 in proxies, prospectuses and annual reports. But we think that notice of that type—usually several paragraphs in a footnote written by management and with a strong denial of merit—would have a far milder impact than a separate communication (though mailed with other papers) composed by the plaintiffs, giving a detailed explanation of the claims and without a denial of merit, particularly when the latter portends the immi-

---

5. *See* Note, *Class Actions Under Federal Rule 23(b)(3)—The Notice Requirement,* 29 Md.L. Rev. 139, 155 (1969). This is true of the instant case where the interests of the class members are said to range from $2.00 to $24.00.

6. The court found: "If the shareholders who purchased during the relevant period were misled into purchasing at inflated prices, then, as far as the present record shows, this problem affects those shareholders who have sold out just as much as those who happened to have retained their shares."

nent prosecution of a matter which the steady flow of prior notices had indicated was dormant if not defunct. In these circumstances, we think that the defendants concern was legitimate and the district court could not properly condition its abatement on defendants' shouldering of the notice costs. The identification costs cannot be viewed as additional expense necessitated by unreasonable or partisan demands on the part of the defendants.

▮ Plaintiffs attempt to distinguish *Eisen III* and *Eisen IV* by asserting that the cost of identifying the members of a class is not a part of notifying those members. They further suggest that identification costs are akin to the expense borne in discovery which a district judge may in his discretion require a party to bear unless the party can show that it is unreasonable and oppressive, citing, *inter alia,* 8 C. Wright & A. Miller, *Federal Practice and Procedure,* § 2218 at 659 (1970), and 4A J. Moore, *Moore's Federal Practice* ¶ 33.20 (2d ed. 1975). However, we are of the opinion that the cost of obtaining the name and address to be affixed to the envelope does not differ in kind from the cost of printing the notice and of procuring, stuffing and posting the envelopes. Moreover, if the rules of discovery were applicable, it appears unlikely that they would require that defendants bear the identification costs here. Rule 33(c), Fed.R.Civ.P., designed to protect parties from burdensome interrogatories, provides:

(c) *Option to Produce Business Records.* Where the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served or from an examination, audit or inspection of such business records, or from a compilation, abstract or summary based thereon, and the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts or summaries.

Under this rule, a party will not be required to perform burdensome extraction of information from sources that are available to the party seeking discovery. *See* 4A J. Moore, *Moore's Federal Practice* ¶ 33.20 at 33–103 (2d ed. 1975); *Tytel v. Richardson-Merrell, Inc.,* 37 F.R.D. 351 (S.D.N.Y.1965); *Konczakowski v. Paramount Pictures, Inc.,* 20 F.R.D. 588 (S.D.N.Y.1957). If the discoverer should proceed under one of the other rules governing discovery, the respondent could obtain a protective order under Rule 26(c) from "undue burden or expense." Nevertheless, we do not rely on this point since we find the discovery rules inapplicable.[7]

### The Class Action Designation

▮ We turn next to the designation of the suit as a class action. The determination of the district court that the action met

---

7. Our dissenting Brother sees Rule 34 as "more specifically designed to govern computerized information." This rule addresses itself to the *production* of data compilations for inspection or copying, not to the sorting or analysis of the data. Although the rule provides that the data compilation may be "translated, if necessary, by the respondent through detection devices into reasonably usable form," the concern appears to focus on putting the data into a form intelligible to the discoverer so he can then study or employ it. As the Advisory Committee Note to the 1970 amendment states,

"[W]hen the data can as a practical matter be made usable by the discovering party only through respondent's devices, respondent may be required to use his devices to trans-

late the data into usable form. In many instances, this means that respondent will have to supply a *print-out* of computer data." 48 F.R.D. at 527 (emphasis added). The task of culling relevant names and addresses from a long list, as confronts the parties here, is a distinctly different one from the production for inspection and copying with which Rule 34 is concerned. If "sophisticated electronic manipulation and analysis" become necessary, "the courts will have to become increasingly sensitive to problems of expense and the utilization of an opponent's computer assets." 8 C. Wright and A. Miller, Federal Practice & Procedure § 2218 at 659 (1970).

the requirements of Rule 23(b)(3) was discretionary. It is not appealable under the collateral order doctrine. In seeking to arrive at some standards by which to determine the appealability of such an order, we have developed a three-pronged test as set forth in *Herbst v. International Telephone & Telegraph Corp.,* 495 F.2d 1308, 1312 (2d Cir. 1974), and refined in *Kohn v. Royall, Koegel & Wells,* 496 F.2d 1094 (2d Cir. 1974), *General Motors Corp. v. City of New York,* 501 F.2d 639 (2d Cir. 1974), in *Parkinson v. April Industries, Inc.,* 520 F.2d 650 (2d Cir. 1975) and, most recently, in *In re Master Key Antitrust Litigation,* 528 F.2d 5, 10–13 (2d Cir. 1975). *See also Handwerger v. Ginsberg,* 519 F.2d 1339 (2d Cir. 1975). In *Parkinson,* we recognized the "renewed emphasis on the policies of finality" and indicated that only in "extraordinary circumstances" would exceptions to the final judgment rule be permitted. 520 F.2d at 657–58. Although it may be a close question whether that three-prong test is satisfied here, we do not decide that question. We think we may properly review the class action designation because the order in which it was made is properly before us on another ground. Judge Friendly, in his concurrence in *Parkinson, supra,* 520 F.2d at 660, suggested that this exception should be made even if appeals from the grant or denial of class action designation are allowed only under the certification procedures of 28 U.S.C. § 1292(b). There is sufficient overlap in the factors relevant to both issues to warrant our exercising plenary authority over this appeal. *Eisen IV, supra,* 417 U.S. at 172; *Hurwitz v. Directors Guild of America, Inc.,* 364 F.2d 67 (2d Cir.), *cert. denied,* 385 U.S. 971, 87 S.Ct. 508, 17 L.Ed.2d 435 (1966). *See San Filippo v. United Bhd. of Carpenters & Joiners,* 525 F.2d 508 (2d Cir. 1975); *General Motors Corp. v. City of New York,* 501 F.2d 639, 648 (2d Cir. 1974); 9 J. Moore, *Moore's Federal Practice* ¶ 110.25[1], at 272–73 (2d ed. 1975).

Turning to the merits of the class action designation we find that the granting of class action status was proper. As Judge Griesa found, the requisite numerousness is present and common questions of law and fact predominate over any questions affecting only the individual members of the class. Moreover, we cannot, at this stage of the litigation, support defendants' claim of unmanageability. They contend that proof of liability and damages "may well involve millions of individual computations," and that the aggregate damages sustained by the class may not be as great as plaintiffs claim. Nevertheless, the district judge is in the best position to make a determination of manageability and has considerable discretion in doing so. Modern computer technology can bring formerly insurmountable tasks within the range of manageability. If, on the other hand, unmanageability should develop or facts should arise which indicate that class treatment is inappropriate, the district judge can reassess the procedures to be employed and can even reconsider the class action designation. *Parkinson v. April Industries, Inc., supra,* 520 F.2d at 653; *General Motors Corp. v. City of New York, supra,* 501 F.2d at 647; *Green v. Wolf Corp.,* 406 F.2d 291, 298 (2d Cir. 1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); Rule 23(c)(1), Fed.R.Civ.P. Judge Griesa specifically noted that his determination was a provisional one.

Accordingly, we affirm the provisional designation of the suit as a class action but reverse the order imposing on the defendant Fund the costs of extracting from computer tapes the names and addresses of the class members.

HAYS, Circuit Judge (dissenting in part):

I concur in the majority's holding that the order below is appealable and the granting of class action status proper. I respectfully dissent, however, from the reversal of the district court order directing defendant Oppenheimer Fund, Inc. ("the Fund") to cull out the names of class members from the Fund's computer tapes at the Fund's expense. The majority's decision, ostensibly predicated on the Supreme Court's decision in *Eisen v. Carlisle & Jacquelin (Eisen IV),* 417 U.S. 156, 94 S.Ct.

2140, 40 L.Ed.2d 732 (1974), uncritically treats a discovery issue as notice and indiscriminately applies a rule appropriate to arms-length relationships to the fiduciary relationship between the parties herein. An elaboration of the particular facts attending this suit is fundamental to understanding the nature of the action and my disagreement with the panel's holding.

Defendant Fund is an open-end diversified investment fund registered under the Investment Company Act of 1940, 15 U.S.C. §§ 80a–1 *et seq.* Defendant Oppenheimer Management Corporation ("the Manager") manages the Fund's investment portfolio and, pursuant to an Investment Advisory Agreement, receives compensation calculated as a percentage of the Fund's net asset value. Defendant Oppenheimer & Co. ("the Broker") is a brokerage firm owning approximately 82% of the outstanding stock of the Manager and 100% of the voting stock. The individual defendants are all directors of the Fund, some of whom also hold offices or directorships or partnership interests in the Manager and/or Broker. The Manager has the right to act as exclusive distributor and sole principle underwriter of Fund shares. Shares are sold to the public at a price equal to net asset value plus a sales charge.

This consolidated suit involves stockholder derivative and class action claims. The class, as certified by the district court, is composed of all persons who purchased Fund shares between March 28, 1968 and April 24, 1970. The complaint alleges that the defendants violated the federal securities laws by failing to disclose material information to investors. The gravamen of the damage claims is that restricted securities purchased by the Fund were overvalued and, consequently, the net asset value of the Fund was overstated. Overstatement of net asset value, in turn, caused an overvaluation of Fund shares being sold to the public during the relevant period and, because the Fund-Manager fee arrangement was geared to net asset value, caused the Fund to pay inflated fees to the Manager.

As the majority apparently recognizes, the Supreme Court's *Eisen IV* decision is not dispositive of the issue of the allocation of costs of identification in the context herein. *Eisen IV* construed the *notice* requirements of Rule 23(c)(2), which apply to class actions maintained under Rule 23(b)(3), in the context of a case wherein "the relationship between the parties is truly adversary." *Eisen IV, supra* at 178–179, 94 S.Ct. at 2153 and held that "[t]he usual rule is that a plaintiff must initially bear the cost of notice to the class." *Id.* at 178, 94 S.Ct. at 2153. In the instant case, in contrast, we deal not with notice costs—a burden plaintiffs herein willingly assume—but with class member identification costs, and we deal not with the usual rule applicable to truly adversarial relationships, but with a rule as to which the Supreme Court took pains to express no opinion—the rule which governs in "situations where a fiduciary duty pre-existed between the plaintiff and defendant. . . ." *Id.* Both of these distinctions merit pause before we rush to close yet another door to the class action procedure.

In *Eisen IV* the Supreme Court held that in a Rule 23(b)(3) class action the cost of notice, *i. e.,* the letter, envelope, stuffing, and postage is, in the usual case, the responsibility of the plaintiff "as part of the ordinary burden of financing his own suit." *Eisen IV, supra* at 179, 94 S.Ct. at 2153. The opinion properly construed requires only that the litigation expense of notice be borne by plaintiff. It does not require, and surely the Supreme Court did not intend, that *all* litigation expenses, contrary to established rules and practice, are to be hereinafter the plaintiff's responsibility. When identification is sought information allowing a party to proceed with his suit is at the core of the request. Thus, in purpose and effect such a request is not different in kind from other requests for information routinely made during discovery. That a suit will be unable to proceed absent identification does not vitiate the validity of characterizing identification as a product ascertainable by discovery and governed by the rules applicable thereto. A contrary

view clearly is belied by the common practice of establishing jurisdiction by means of discovery.

Rule 34 governs the production of computerized information, making discoverable, *inter alia*, "data compilations from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form. . . ."[1] As noted by 8 C. Wright and A. Miller, Federal Practice and Procedure § 2218 at 659 (1970):

> "The responding party who is required to prepare a printout or otherwise make the data reasonably usable for the discovering party must ordinarily bear the expense of doing this. He can shift the cost to the discovering party only on a showing under Rule 26(c) that justice so requires in order to protect himself from 'undue burden or expense.'" (footnote omitted)

While the authors suggest that courts should be sensitive to the expense involved since the disclosing party may be obliged "to engage in fairly sophisticated electronic manipulation and analysis," *id.*, expense remains an issue properly resting within the sound discretion of the district judge. Under the facts of this particular case the district judge did not consider the costs of processing the defendant's tapes an "undue burden or expense." It is not our practice to disturb the discretionary judgment of a district court in the realm of discovery absent a showing of abuse, *see, e. g., Baker v. F & F Investment*, 470 F.2d 778 (2d Cir. 1972), *cert. denied*, 411 U.S. 966, 93 S.Ct. 2147, 36 L.Ed.2d 686 (1973); *H. L. Moore Drug Exchange, Inc. v. Smith, Kline & French Laboratories*, 384 F.2d 97 (2d Cir. 1967), and discovery of class members should provide no exception. Imposing the cost of culling out the names of members of the class upon the Fund involved no abuse of discretion. The district court, finding this expense attributable to defendants' objections to plaintiffs' efforts to define a subclass minimizing expenses, *cf. Eisen IV, supra* at 179, n. 16, 94 S.Ct. 2140, did not commit reversible error in refusing to shift this burden to plaintiffs. Moreover, the order below specifically notes that it is "without prejudice to the right of this defendant [the Fund], at the conclusion of the action, to make whatever claim it would be legally entitled to make regarding reimbursement by another party."

Assuming, *arguendo*, that the majority is correct in failing to distinguish identification from notice, reversal of the district court's order is neither compelled by *Eisen IV* nor an advisable extension of that case. As we noted in *Eisen v. Carlisle & Jacquelin*, 479 F.2d 1005, 1009 n.5 (2d Cir. 1973)[2] ("*Eisen III*") and the Supreme Court noted

---

1. It is somewhat disingenuous to focus, as the majority does, on Rule 33 which *governs* interrogatories rather than the Rule more specifically designed to govern computerized information. Since the disclosing party has opted to keep his records on computer tapes, there is good reason to allow the district court the usual discretion as to costs of retrieving information from those tapes lest discovery be obstructed by irretrievably burying information to immunize business activity from later scrutiny.

2. The footnote, in pertinent part, states: "Nor did we decide or intend to say [in *Eisen II*, 391 F.2d 555 (2d Cir. 1968)] that in all cases or under all circumstances plaintiffs in class actions are or must be required to defray the cost of giving the various notices specified in amended Rule 23. This is an action to recover money damages for alleged violations of Section 4 of the Clayton Act and Section 6 of the Securities and Exchange Act of 1934. It is not a derivative stockholder's action asserting a cause of action in favor of a defendant corporation, which regularly sends communications to all the stockholders and may be said to owe its stockholders certain fiduciary duties, nor a case where a public utility corporation which regularly sends monthly bills to its current customers has been held to have overcharged its customers and the class suit is brought to compel a refund. There may be other similar examples of class actions in which, depending on the circumstances of particular cases, courts might find justification for holding that a representative plaintiff was not obligated to defray the cost of giving the notices required by amended Rule 23. We do not attempt any enumeration. It must be recalled that the provisions for notice in amended Rule 23 were intended to comply with constitutional requirements. See Advisory Committee's Note, 39 F.R.D. 69, 107."

in *Eisen IV,* the usual rule that the representative plaintiff must bear the cost of notice may not apply "where a fiduciary duty pre-existed between the plaintiff and defendant. . . ." *Eisen IV, supra* at 178, 94 S.Ct. at 2153. The instant appeal squarely raises the issue, heretofore undecided, of whether notice costs may properly be imposed upon a defendant when the relationship of the parties is truly fiduciary. I would hold that they may.

Unquestionably the relationship between Fund shareholders and the defendants herein is of a fiduciary nature. As one court has observed, the Investment Company Act "impose[s] fiduciary obligations of the highest order upon persons who control investment companies." *Securities and Exchange Commission v. Advance Growth Capital Corp.,* 470 F.2d 40, 55 n.21 (7th Cir. 1972). *See,* Investment Company Act of 1940, 15 U.S.C. § 80a–35. So too, "[t]he Investment Advisors Act of 1940 . . . reflects a congressional recognition 'of the delicate fiduciary nature of an investment advisory relationship.'. . ." *Securities and Exchange Commission v. Capital Gains Research Bureau, Inc.,* 375 U.S. 180, 191, 84 S.Ct. 275, 282, 11 L.Ed.2d 237 (1963), *quoting* 2 Loss, Securities Regulation (2d ed. 1961) at 1412. It is the breach of these fiduciary duties which is at the core of this suit.

When the defendants assumed their positions with the Fund they knew, or clearly should have known, that the law imposes very strict standards upon their conduct. Their relationship to the plaintiff class is one of trust; the entire scheme of our investment company and advisor regulation is predicated upon that trust being respected inviolate. A breach of a fiduciary duty traditionally has been considered a much graver transgression than, for example, breach of a contractual duty. Thus, as the majority notes, the Supreme Court in *Eisen* "refused to foreclose the possibility" of allocating notice costs where there exists a fiduciary duty between the parties and their relationship is not truly adversarial. Absent such a special relationship and without support under Rule 23, the Supreme

Court found no justification for deviating from the usual rule that a plaintiff must bear notice costs. In cases involving fiduciaries, however, the usual rules traditionally have been modified to insure that the trust relationship is not abused. The norms appropriate in the context of arms-length bargaining are simply inapposite in the fiduciary context. Thus, the usual rule should not apply to preclude class action when to do so creates a serious potential for insulating fiduciary breaches from redress. I would affirm the district court.

On rehearing en banc

Before KAUFMAN, Chief Judge, and HAYS, FEINBERG, MANSFIELD, MULLIGAN, OAKES, TIMBERS, GURFEIN, VAN GRAAFEILAND and MESKILL, Circuit Judges.

Appeal from an order of the United States District Court for the Southern District of New York, Griesa, J., holding the suit to be maintainable as a class action pursuant to Rule 23(b)(3), Fed.R.Civ.P., and directing the defendant mutual investment fund to cull names and addresses of class members from its computerized records. On rehearing en banc, the Court of Appeals held that the district court acted within its discretion in ordering defendant mutual fund to extract the names and addresses of class members at its own expense.

Affirmed.

MULLIGAN, VAN GRAAFEILAND and MESKILL, Circuit Judges, dissent.

HAYS, Circuit Judge:

■ Upon this rehearing en banc we are confronted with the novel question whether, under the Federal Rules of Civil Procedure, the district court was empowered to order a defendant at its own expense to cull from its computerized records the names and addresses of the members of the class represented by plaintiffs. We hold that the district court was possessed of discretion to require the production of the list which plaintiffs demand in order to meet their

obligations under Rule 23(c)(2), *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (*Eisen IV*), of providing individualized notice to the members of the class. On the record before us, the district court did not abuse its discretion.

The defendant Oppenheimer Fund, Inc., which was required by the district court to produce the names and addresses of the members of the class, is an "open-end" investment company registered under the Investment Company Act of 1940, 15 U.S.C. §§ 80a–1 *et seq.* Shares of the fund are sold to the public at prices reflecting the current value of the fund's assets plus a service charge; shareholders of the fund are free to liquidate their interests by exchanging their shares for a sum determined to represent their proportionate share of the fund's net assets. The roster of shareholders, who number well over 100,000, is of course constantly changing. It scarcely need be said that the computer plays an integral role in the operations of the fund; indeed, in the absence of computer technology, operations so vast and complex as those of the fund might well be impossible to conduct.

The defendant Oppenheimer Management Corporation is the investment adviser which manages the fund's investment portfolio. All of the voting stock of the investment adviser is owned by the defendant Oppenheimer & Co. Individual defendants are directors of Oppenheimer Fund; some of the individual defendants, in addition to occupying directorships in the fund, are officers, directors, or partners of Oppenheimer & Co. or the Oppenheimer Management Corporation.

The plaintiffs are shareholders of the fund. The essence of their complaint is that defendants overvalued restricted securities purchased by the fund; the overvaluation of the fund's assets is alleged in turn to have caused the inflation of the prices at which plaintiffs purchased shares in the fund and to have caused overpayments to the fund's manager, defendant Oppenheimer Management Corporation, whose fees are computed as a percentage of the net asset value of the fund's portfolio.

In their initial motion for class determination pursuant to Rule 23(c)(1), plaintiffs sought to represent all who purchased shares of the fund between March 28, 1968, and April 24, 1970. After this Court's holding in *Eisen v. Carlisle & Jacquelin*, 479 F.2d 1005 (2d Cir. 1973) (*Eisen III*), aff'd, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (*Eisen IV*), plaintiffs sought a redefinition of the class to exclude those who had sold their shares in the fund. Plaintiffs hoped thus to reduce the cost of the individualized notice to class members which *Eisen III* and *Eisen IV* required plaintiffs to bear, by including the notice in a regular mailing by the fund to its shareholders. At the time when plaintiffs requested the modified class determination, there were approximately 171,000 shareholders of the fund, 103,000 of whom had purchased their shares during the class period; those who had purchased during the class period and subsequently sold their shares—and thus would have been excluded from the class if plaintiffs' proposed modification had been accepted—numbered some 18,000. The defendants opposed the class modification, preferring the broader class definition. By its order, the district court rejected plaintiffs' proposed redefinition of the class and directed that notice be effected by a separate mailing to all class members. Thus to notify a class so defined will cost the plaintiffs $20,000, in comparison to the $5,000 expense which their proposed class definition and method of notice would have entailed. The district court, however, required the fund to shoulder the expense, about $16,000, of extracting from its computerized records the list of the names and addresses of the class members. Defendants appeal from the district court's order insofar as it determined that the lawsuit was properly maintainable as a class action and that defendants should, at their own expense, provide the plaintiffs with the names and addresses of class members.

A panel of this Court determined that the district court's order was appealable and

that the litigation was manageable as a class action. 558 F.2d 642 (1976). We do not reconsider these aspects of the panel's decision, and we limit our discussion to the question, answered in the negative by the panel, whether defendants were properly required to bear the cost of furnishing plaintiffs with the list of class members.

*Eisen IV* held that Rule 23(c)(2), reflecting constitutional principles of due process, *see Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), commands that "individual notice must be provided to those class members who are identifiable through reasonable effort." 417 U.S. at 175, 94 S.Ct. at 2151. The Supreme Court further held in *Eisen IV* that the representative plaintiff was required to bear the cost of notice:

"In the absence of any support under Rule 23, petitioner's effort to impose the cost of notice on respondents must fail. The usual rule is that a plaintiff must initially bear the cost of notice to the class. . . . [T]he plaintiff must pay for the cost of notice as part of the ordinary burden of financing his own suit."

*Id.* at 178–79, 94 S.Ct. at 2153. The Court in *Eisen IV* had no occasion to consider which party would bear the cost of determining the names and addresses of those to whom the notice would be sent, because the plaintiff in *Eisen,* unlike the plaintiffs in the instant litigation, was unwilling to bear even the expense of printing and mailing the required notice.

Defendants argue that, since it is prerequisite to sending the notice mandated by *Eisen IV* that plaintiffs obtain the names and addresses of those to whom the notice will be sent, *Eisen* should govern the allocation of the cost of providing the information. We disagree. In *Eisen,* the plaintiff's effort to impose the costs of notice upon the defendants failed "[i]n the absence of any support under Rule 23." Here, Federal Rule of Civil Procedure 34 provides the basis for requiring the fund, at its own expense, to provide plaintiffs with discoverable information contained in its computerized records.

It hardly requires our extended discussion to establish that the information sought by plaintiffs as to the names and addresses of the members of the class is indeed within the broad scope of permissible discovery established by our Federal Rules. Under Rule 26, "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . ." Fed.R. Civ.P. 26(b)(1). The holding of *Eisen IV* itself propels us ineluctably to the conclusion that the names and addresses of class members are "relevant to the subject matter" of a class action. By mandating that a representative plaintiff in a class suit send individualized notice to the members of his class, *Eisen* raises as a potential issue in all such litigation whether the required notice has properly been sent. A list of the names and addresses of the class members would of course be essential to the resolution of that issue. *See Appleton Electric Co. v. Advance United Expressways,* 494 F.2d 126, 138 (7th Cir. 1974); *Brennan v. Midwestern United Life Ins. Co.,* 450 F.2d 999 (7th Cir. 1971), *cert. denied,* 405 U.S. 921, 92 S.Ct. 957, 30 L.Ed.2d 792 (1972).

Under Rule 34(a), plaintiffs were entitled "to inspect and copy, any designated documents (including . . . data compilations from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form) . . . ." Rule 34, therefore, provided ample basis for the district court's order compelling the defendant fund to produce from its computerized records the discoverable information concerning the names and addresses of the class members. The 1970 amendments to the Federal Rules rendered Rule 34 specifically applicable to the discovery of computerized information:

"The inclusive description of 'documents' is revised to accord with changing technology. It makes clear that Rule 34 applies to electronic data compilations from which information can be obtained only with the use of detection devices, and that when the data can as a practical

matter be made usable by the discovering party only through respondent's devices, respondent may be required to use his devices to translate the data into usable form. In many instances, this means that respondent will have to supply a print-out of computer data."

Advisory Committee Note, 48 F.R.D. 459, at 527 (1970).

Defendants argue, however, that because plaintiffs' requests for computerized information require the fund to devise, at a cost in excess of $16,000, a special computer program to extract the names of the class members, plaintiffs should be required to bear the added expense. We acknowledge that Rule 34, coupled with Rule 26(c), allows the district court to shift the expense of special computer programming to the discovering party where the demand for information would impose upon the respondent "undue burden or expense", but we hold that in the instant case the trial judge did not abuse his discretion in declining so to do.

Rule 33, which defendants contend would dictate a different result, is inapplicable. That Rule provides, in pertinent part:

"(c) Option to Produce Business Records. Where the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served or from an examination, audit or inspection of such business records, or from a compilation, abstract or summary based thereon, and the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts or summaries."

It may well be that where ordinary business records are concerned Rule 33 would generally require that the discovering party bear the expense of data compilation unless for special reason the compilation can be undertaken only by the respondent.[1] However, Rule 33(c) cannot derogate from the general command of Rule 34 that the respondent to a demand for computerized information produce a "reasonably usable" print-out of data contained in a computer's memory. Unlike Rule 34, Rule 33 was not especially tailored to the discovery problems posed by contemporary computer technology.

Here, the demand for computerized information creates a necessity for special programming, entailing the substantial expenditure of $16,000 by the fund. Nonetheless, there is no warrant for applying an inflexible rule that the discovering party bear the expense. Computers, which in general make information more readily available, may occasionally make information more difficult to discover. Even where a party adapts his computer software strictly in accordance with legitimate business purposes, complex electronic processes may be required to extract information which might have been obtainable through a minimum of effort had different systems been used. If the information demanded is such as the respondent might reasonably have expected to be required to make available for public examination or for use in the judicial process, it seems not unfair to require production of the information albeit necessitating special programming. In this and other respects, computer technology presents discovery problems with which the courts have developed relatively little familiarity.

The Rules do not leave the courts without power to avoid a litigant's unreasonable appropriation to himself of his opponent's computer resources. "[T]he courts have ample power under Rule 26(c) to protect respondent against undue burden of expense, either by restricting discovery or re-

---

1. We intimate no view as to what the result in the instant case would be if Rule 33(c) were deemed applicable.

quiring that the discovering party pay costs." Advisory Committee Note, *supra,* 48 F.R.D. at 527. *See also* Federal Judicial Center, Manual for Complex Litigation ¶ 2.715, at 152 (Tent. Draft July 21, 1976); 8 C. Wright & A. Miller, Federal Practice and Procedure § 2218, at 658–59 (1970). However, the draftsmen of Rule 34 chose—wisely, in light of the relative judicial inexperience with the discovery problems posed by computer technology—not to burden discovery of computerized information with the more rigid principle of Rule 33(c). The existence of discretion pursuant to Rule 26(c) to reallocate the costs of discovery of computerized information in order to avoid abuse merely underlines the general rule: "The responding party who is required to prepare a printout or otherwise make the data reasonably usable for the discovering party must ordinarily bear the expense of doing this." *Id.* at 659.[2]

■■■■ The district court did not err in declining to exercise its discretion pursuant to Rule 26(c) to impose the costs of obtaining the computerized data upon the plaintiffs. Although compliance with the district court's order entails an expenditure by the fund in excess of $16,000, we cannot say the burden thus imposed is unreasonable in light of the nature of the information sought and the extent and character of the fund's business operations. Although an expense of $16,000 seems large in absolute terms, the cost of identifying the name and address of each present or former shareholder who is a member of the class is only thirteen cents. Considering the extent of the fund's business therefore, the burden of compliance with the Rule 34 discovery demand is not excessive. There is no injustice

in requiring one whose business is vast and complex to go to proportionately greater lengths to meet the law's legitimate requirements for disclosure of business-related information than might be expected of one whose business is small and simple. Great corporations, for example, must expend millions to provide to the government information necessary to comply with internal revenue laws; an individual taxpayer may provide the required information at a cost to himself of a mere few dollars. It is scarcely unreasonable, moreover, to demand of a respondent that he employ his computer resources to provide discoverable information of a relatively simple nature where, as here, the respondent makes extensive use of computers in the operation of its business.

The order of the district court allocating the costs of discovery of the computerized names and addresses of the class members was not unreasonable, moreover, in light of the district court's definition of the class. The plaintiffs sought to redefine the class to exclude former shareholders of the fund, so that the individualized notice mandated by *Eisen IV* could be inserted, at small expense, in one of the fund's regular mailings. The defendants opposed the class redefinition and the proposed method of notice on the grounds, respectively, that the more restrictive class definition would exclude potential class members as to whom the legal and factual issues would be similar to those raised by plaintiffs,[3] and that the proposed notice to all the fund's shareholders would prejudice the fund by notifying even those shareholders not involved in the

2. Professors Wright and Miller note, "In many instances the peculiarities of computerized information actually will oblige the disclosing party to engage in fairly sophisticated electronic manipulation and analysis of the data in his computer system." *Id.*

3. Accordingly, defendants might have been bound by collateral estoppel if they lost on the merits, but, if the defendants won, they would not have been entitled to assert *res judicata* against the former shareholders who were not class members. *Compare Neaderland v. Commissioner,* 424 F.2d 639, 642 (2d Cir.), *cert.*

*denied,* 400 U.S. 827, 91 S.Ct. 53, 27 L.Ed.2d 56 (1970) (collateral estoppel), *with Saylor v. Lindsley,* 391 F.2d 965, 968 (2d Cir. 1968) *(res judicata).*

On the other hand, the issues presented might have been somewhat different for those who had sole their shares than for those who were still shareholders; the members of the former group might not have been damaged by the alleged overvaluation of the fund's net assets.

litigation.[4] The district court rejected plaintiffs' proposed redefinition of the class. Plaintiffs, accordingly, are required to bear an expense of $20,000 to notify the class, in comparison to the $5,000 cost which plaintiffs had contemplated. But the district court declined to impose on plaintiffs the added cost of discovering the names and addresses of the class members, which cost was occasioned by the court's agreement with defendant that the fund would have been harmed by the proposed class redefinition. The considerations advanced by the defendant in opposition to plaintiffs' proposed class redefinition were undoubtedly entitled to some weight; still, they did not *require* the class definition ultimately accepted by the district court.[5] *See Eisen IV,* 417 U.S. at 179 n. 16, 94 S.Ct. 2140, 40 L.Ed.2d 732 and *Eisen III,* 479 F.2d at 1023 (Oakes, J., dissenting from denial of rehearing en banc) (raising possibility that class may be divided into subclasses pursuant to Rule 23(c)(4) so as to minimize cost of notice borne by representative plaintiff). *Cf. Eisen III,* 479 F.2d at 1009 n. 5 (suggesting that notice may be included in regular mailing by defendant to class members). As such, we are not disposed to hold that the district court's refusal to impose on plaintiffs the cost of discovery of the computerized names and addresses was an abuse of its discretion. Indeed, the order of the district court accommodated the competing interests in a manner which was fair and imaginative.

We note, finally, that our affirmance of the district court's order is without prejudice to a claim by the defendant fund for discretionary taxation of the cost of discovery against plaintiffs, should the plaintiffs ultimately lose. *See* 15 U.S.C. §§ 77k(e), 77*ooo*(e) and 78i(e); Fed.R.Civ. Pro. 54(d). If plaintiffs' suit proves frivolous, their attorneys might be held liable for the cost of discovery which, defendant fund is now required to bear. 28 U.S.C. § 1927. Plaintiffs have represented that they are unwilling to bear the cost of discovery of the names and addresses of the class members. However, their present unwillingness to pay this cost does not immunize them from a judgment for costs, nor does it necessarily diminish the deterrent effect of such a judgment against a strike suit.[6] The mere possibility that plaintiffs may prove to be judgment-proof does not affect our decision, since here, unlike in *Eisen,* there is a basis in the Federal Rules for imposition of the cost of discovery on the defendant fund. *Cf. Eisen III,* 479 F.2d at 1020 (Hays, J., concurring).

Affirmed.

MULLIGAN, Circuit Judge (dissenting):

Ironically enough, the majority states that its holding is compelled by *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (*Eisen IV*) and Rule 23(c)(2) although the Court in that case construed the rule to require the representative plaintiffs to pay the costs of notifying the prospective class of the pending action. The majority reaches this result by finding that the plaintiffs, who admittedly are only seeking the list of names and addresses of the potential plaintiff class in order to notify them of the pending action, are seeking instead a discovery which makes the cost allocable to the defendants in the discretion of the district court thus circumventing Rule 23 and *Eisen IV.* The majority then proceeds to find no abuse of discretion by the district court in foisting the special computer programming cost upon the defendant fund. Since the only purpose of obtaining the required information is to notify the class as mandated by Rule 23, *Eisen IV* compels the conclusion

---

4. However, under Rule 23(c)(2) the district court could have supervised the form of notice included in one of the fund's regular mailings, so as to avoid undue prejudice to the fund. In any event, the fund has already notified its shareholders on many occasions of the pendency of this litigation.

5. *See* notes 3–4 *supra.*

6. The requirement that plaintiffs bear the $20,-000 expense of notifying the class is itself a formidable deterrent to frivolous litigation, for, if plaintiffs lose, they cannot recover their disbursements.

that the cost of such notification be borne initially, at least, by the plaintiffs. The majority forces the defendant to subsidize the suit against it, a result which is aberrant to our jurisprudence and to the extent that it depends upon the premise that the defendant has greater financial resources is further in conflict with *Eisen IV*. In sum, we believe Judge Palmieri's opinion for the panel properly disposed of the issue now before us en banc.[1]

## I

In *Eisen IV* the Court stated, "The usual rule is that a plaintiff must initially bear the cost of notice to the class." Id. at 178, 94 S.Ct. at 2153. The majority does not claim that this case falls outside the usual rule.[2] Instead, the majority has decided that obtaining the names and addresses of the prospective class is not part of the notification process mandated by Rule 23(c)(2) but is rather within a discovery process governed by an amalgam of Rules 26(b)(1) and 34. As a matter of logic this is bewildering. The only purpose of the plaintiffs here in obtaining the data is to notify the class; it is an essential and unavoidable step in the notice giving process. As Judge Palmieri observed "the cost of obtaining the name and address to be affixed to the envelope does not differ in kind from the cost of printing the notice and of procuring, stuffing and posting the envelope's." At 642. The majority now creates in effect a bicephalous rule which is anomalous. The cost of printing, stuffing and postage of the notice *must* be borne by the plaintiffs but the cost of obtaining the names and addresses to put on the envelopes *may* be

thrust upon the defendants in the discretion of the trial bench. As *Eisen IV* held, "the plaintiff must pay for the cost of notice as part of the ordinary burden of financing his own suit." 417 U.S. at 179, 94 S.Ct. at 2153. We cannot appreciate how it can be reasonably held that the expense incurred in producing the list of addresses is distinguishable from the expense of preparing and mailing the notice.

The majority cites no authority at all for its novel position except to claim that the result is mandated by Rule 23 and *Eisen IV*. But Rule 23(c) requires the district court to direct "the best notice practicable under the circumstances, including *individual* notice to all members who *can be identified* through reasonable effort." (Emphasis supplied). This language would clearly indicate that the draftsmen of the rule made no distinction between the identification of the class and the notification of individual members. Notification posits identification which is an inseparable part of the process.

How then does *Eisen IV* compel a result which seemingly contradicts its holding? This is the crucial point in the majority holding since it is the basis for the determination that the discovery Rule 34 is applicable and not Rule 23. The majority finds that it "hardly requires our extended discussion" to establish that the list sought is within the scope of permissible discovery established by the rules. Its reasoning is as follows:

> Under Rule 26(b), "[p]arties may obtain discovery regarding any matter . . . relevant to the subject matter involved in the pending action . . . ." Fed.R. Civ.P. 26(b)(1). The holding of *Eisen IV*

1. Hon. Edmund L. Palmieri, United States District Judge for the Southern District of New York, sat by designation on the original panel and was the author of the majority decision. At 636 (2d Cir., June 30, 1976). Fed.R.App.P. 35, which provides for en bancs, makes no allowance for the participation of members of the original panel who are not judges of the Court of Appeals. Thus, Judge Palmieri has not participated in this en banc consideration.

2. In *Eisen IV* the Court noted that the district court in allocating the cost of notification between the parties had relied on cases where a

fiduciary duty had pre-existed between the plaintiff and the defendant. While finding none in *Eisen IV* the Court expressed no opinion as to whether the usual rule would be followed in such cases. 417 U.S. at 178 n. 15, 94 S.Ct. 2140. Plaintiffs had argued before the panel that they were in a fiduciary position with the defendants and that therefore the possible loophole in *Eisen IV* applied. Judge Hays, dissenting in the panel opinion, espoused that position but it has been understandably abandoned in the en banc majority opinion.

itself propels us ineluctably to the conclusion that the names and addresses of class members are "relevant to the subject matter" of a class action. By mandating that a representative plaintiff in a class suit send individualized notice to the members of his class, *Eisen* raises as a potential issue in all such litigation whether the required notice has properly been sent. A list of the names and addresses would of course be essential to the resolution of that issue.

This is an exercise in sophistry and not syllogistic reasoning. No one questions that Rule 23 mandates that the plaintiffs have the obligation to notify the class and the majority in that part of the opinion we have excerpted admits that a list of the names and addresses is an essential step in the required notification. How then can it avoid the holding of *Eisen IV* that such costs must be assumed by the plaintiffs? The *deus ex machina* employed is discovery under Rule 34. We do not maintain that discovery in class action cases is limited to the search for evidence or leads relevant to the substantive merits of the underlying controversy. It properly may encompass inquiry to determine whether class action requirements can be satisfied.[3] However, that was not the purpose of the plaintiffs here. The district court has certified the class and found that the action was properly maintainable as a class action. The panel unanimously agreed and no one in the en banc panel disagrees. There is no issue as to numerosity or a predominance of common questions of law or fact. The plaintiffs have never sought discovery relief under Rule 34. In the memoranda submitted by the plaintiffs to Judge Griesa prior to his opinion below there is no mention of Rule 34. Judge Griesa expressly and correctly

perceived the issue as being "who is to bear certain expenses connected with the giving of notice." *Sanders v. Levy,* 69 Civ. 1242, Slip op. at 2 (S.D.N.Y. May 15, 1975).

No party here, certainly not the plaintiffs, is seeking "discovery" as a method of determining whether notice has "properly" been sent. Plaintiffs are not anticipating potential issues and seeking discovery to maintain a position. They were avowedly and quite simply seeking the list to notify the class under Rule 23. Should any issue arise as to "proper notification", e. g., was the list complete, was the notice appropriate, was the postage adequate, presumably it would be raised by a putative member of the class but not *in limine* by the plaintiffs who are required to notify and pay the costs of notification under *Eisen IV.*

The raw tape data from which the proper list can be ascertained is fully available to the plaintiffs. The only issue is who is to pay the expense of the special programming necessary to make it usable. The names and addresses which will be so produced will be equally accurate no matter who pays the cost. Since the obligation of proper notification is admittedly on the plaintiffs we cannot understand by what alchemy the majority decides that the cost becomes attributable to the defendant. We can only conclude that the majority while purporting to follow *Eisen IV* is in fact flouting its holding.[4]

II

Having decided that the notification required by Rule 23 has been somehow transmogrified by *Eisen IV* into a discovery procedure not governed by Rule 23, the majority proceeds to find no abuse of discretion in requiring the defendant fund to

**3.** See Annot., Discovery for Purposes of Determining Whether Class Action Requirements Under Rule 23(a) & (b) of Federal Rules of Civil Procedure Are Satisfied, 24 A.L.R. Fed. 872 (1975). Here, of course, it has already been determined that the requirements for the class action have been satisfied.

**4.** We note that in *Eisen IV* the petitioner's brief argued, "Subjecting Respondents to the cost of

notice does not differ in effect from requiring parties to make substantial expenditures to comply with discovery orders . . . ." Petitioner's brief at 40–41. The same argument was advanced on oral argument before the Supreme Court, 42 U.S.L.W. 3493. The Court did not even dignify this argument by any discussion in its opinion.

finance the suit against it, by relying on two factors which it finds persuasive. In rejecting the "inflexible" rule espoused by the Supreme Court, the majority then proceeds to impose its own by holding that there is no injustice in requiring one whose business is vast and complex to pay the substantial costs involved, while suggesting that the result might be different if the defendant's business was small and simple. But class actions for damages are invariably' brought' against those who are relatively opulent and affluent in comparison with the plaintiffs. This is inherent in the theory of the action. The impecunious or those of modest means are seldom if ever the target of such damage actions. The deeper pocket is invariably in the trousers of the defendant. This consideration moreover was expressly rejected in *Eisen IV* where the Court stated, "There is nothing in Rule 23 to suggest that the notice requirements can be tailored to fit the pocketbooks of particular plaintiffs." 417 U.S. at 176, 94 S.Ct. at 2152. The majority's attempt to transmute notification into discovery, as we have indicated, is totally unpersuasive.

The labored reasoning of the majority becomes evident in the analogy it draws. The majority argues that great corporations must expend millions to provide the government with information necessary to comply with the internal revenue laws. The information thus sought, however, is to determine whether there has been any violation of those laws and the retention of such records and data is imposed by those laws. But what law demands that the defendant maintain lists of past and present customers who might in the future band together to sue the corporation in some class whose perimeters will be fixed by the accidents and exigencies of possible litigation? There is no question that the information sought here has nothing to do with the merits of the underlying action. Nor is it relevant to determine whether the class action is properly maintainable. It is sought simply for notification purposes and not discovery in any sense in which that process has ever been defined. Moreover, the data is available if the plaintiffs are willing to assume the burdens, as well as the benefits, of the class action they have initiated. To require corporate defendants to so arrange their computer programming as to anticipate the endless variety of prospective classes which might some day bring class actions is, of course, unrealistic and not required by any law we know of until this decision which hopefully will be short lived.

The second consideration stressed by the majority is that when the plaintiffs sought to redefine by excluding some 18,000 investors the class they had initially selected, the defendants opposed the attempt. This resulted in a higher cost than would have resulted if the plaintiffs had been successful in reducing the class. Thus as the majority seems to view the matter, the defendant fund has somehow brought the burden of spending $16,580 at 1973 levels upon its own head. But the district court found that the exclusion of the 18,000 "would involve an arbitrary reduction in the class," since these people "logically belong in the class." *Sanders v. Levy,* 69 Civ. 1242, Slip op. at 7, 10 (S.D.N.Y. May 15, 1975). The determination of the scope of the class was on the merits. We cannot agree that by opposing an improper class a defendant thus becomes liable for any increased costs of notification. The class cannot become proper only if the defendant bears the costs of notifying the members. If this is to be the law the opportunities for abuse become obvious.[5]

---

5. The majority does not make clear what weight the district court is to attribute to either the wealth factor or the opposition-by-defendant-to-size-of-class factor in determining who should bear the cost. Is one factor sufficient or must both be present? It does seem clear that the court is limiting its holding to those cases involving computer technology and Rule 34 and not business records under Rule 33. We expect that until the Supreme Court intervenes, this court will be asked to further rule on this issue. The burden is not inconsiderable. There were 176 class actions filed in the Southern District of New York alone in fiscal 1976 and at the end of fiscal 1976, 408 class actions were pending in that district. There were 724 pending at that time in all the districts of this Circuit. Total filings of class actions in United States courts increased from 2,717 in 1974 to 3,584 in 1976 with 5,987 pending at the end of

The majority is not totally insensitive to the obvious inequity of requiring the defendant to finance the class action brought against it. It suggests that if the plaintiffs ultimately lose discretionary costs "might" be assessed against them. But this is unrealistic. The plaintiffs have consistently maintained that they cannot afford to pay the $16,580 costs entailed. Their average stake in the litigation is in the range of $2 to $24. The prospect of the defendant obtaining reimbursement is dim indeed. The further suggestion that the costs may be recouped from counsel to the plaintiffs is admitted only as a possibility if the suit is found to be frivolous. If it is simply unsuccessful on the merits there is no hope at all of reimbursement. On the other hand, if the plaintiff class is successful there is no question that the prevailing parties will be entitled to costs, Fed.R.Civ.P. 54(a). Cost transference at this stage of the litigation therefore is hardly justified by the highly doubtful recoupment possibilities envisaged by the majority in derogation of the normal principles reiterated in *Eisen IV*.[6]

Although responsible commentators have indicated that class actions for damages have in fact become a financial bonanza only for the attorneys and not for members of the class and have, in effect, converted the federal courts into small claims courts,[7] a burden not inconsiderable in days of overcrowded calendars and apparently not alleviated by *Eisen IV,* see notes 5 & 6 *supra,* we do not rest our decision at all on that basis. Nor do we rest it on our recognition which is implicitly shared by the majority that strike suits may be encouraged by the added prospect of obtaining settlements of nonmeritorious claims because of the increased cost of defending them. Rather we base our dissent on the ground that the costs

involved here are unquestionably costs of notification which must be borne by the plaintiffs under Rule 23 and therefore are clearly within the rule of *Eisen IV.* The strained attempt to convert notification into Rule 34 discovery is conceptually unsound and unprecedented. We would therefore adhere to the well-reasoned opinion of Judge Palmieri for the panel.

---

fiscal 1976. Administrative Office of the United States Courts, 1976 Annual Report of the Director 117–24.

**6.** The imposition of the cost of giving notice upon the plaintiff has apparently not proved any great hindrance to class actions. See Note, The Rule 23(b)(3) Class Action: An Empirical Study, 62 Geo.L.J. 1123, 1145–48 (1974); Developments in the Law—Class Actions, 89

Harv.L.Rev. 1319, 1434 n.223 (1976) as well as the statistics set forth in note 5 *supra.*

**7.** *Free World Foreign Cars, Inc. v. Alfa Romeo, S.p.A.,* 55 F.R.D. 26, 30 (S.D.N.Y. 1970) (Weinfeld, J.); H. Friendly, Federal Jurisdiction: A General View 119–20 (1973). In this action the interests of the class members, as we have indicated, range from $2.00 to $24.00.